**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX E. RINEHART, On Behalf of Himself And All Others Similarly Situated, | **Civil Action No. 08cv5598 (LAK)** |
| Plaintiff, | |
| vs. | |
| LEHMAN BROTHERS HOLDINGS INC., RICHARD S. FULD, JR., MICHAEL L. AINSLIE, JOHN F. AKERS, ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT, ROLAND A. HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, ERIN M. CALLAN, WENDY M. UVINO, THE EMPLOYEE BENEFIT PLANS COMMITTEE, and JOHN DOES 1-10, | |
| Defendants. | |

[Additional Captions Follow]

**REPLY DECLARATION OF MARK C. RIFKIN IN FURTHER**
**SUPPORT OF PLAINTIFFS' JOINT MOTION TO CONSOLIDATE**
**ERISA CASES, TO APPOINT INTERIM CLASS CO-COUNSEL, AND**
**FOR ENTRY OF PRETRIAL ORDER NO. 1, AND IN OPPOSITION**
**TO PLAINTIFF MARIA DESOUSA'S MOTION FOR (1) CONSOLIDATION,**
**(2) APPROVAL OF THE PROPOSED LEADERSHIP STRUCTURE,**
**(3) ENTRY OF [PROPOSED] PRETRIAL ORDER NO. 1 AND**
**(4) RESPONSE IN OPPOSITION TO THE RESPECTIVE COMPETING**
**MOTIONS OF PLAINTIFFS RINEHART/FONG AND PLAINTIFF BUZZO**

| | |
|---|---|
| JO ANNE BUZZO, On Behalf of Herself And All Others Similarly Situated, | **Civil Action No. 08cv6245 (LAK)** |
| Plaintiff, | |
| vs. | |
| LEHMAN BROTHERS HOLDINGS INC., WENDY M. UVINO, LEHMAN BROTHERS HOLDINGS INC. EMPLOYEE BENEFIT PLANS COMMITTEE, JOHN DOES 1-10, HENRY KAUFMAN, JOHN F. AKERS, ROGER S. BERLIND, MARSHA JOHNSON EVANS, and ROLAND A. HERNANDEZ, | |
| Defendants. | |
| MONIQUE MILLER FONG, On Behalf of Herself And All Others Similarly Situated, | **Civil Action No. 08cv6282 (LAK)** |
| Plaintiff, | |
| vs. | |
| LEHMAN BROTHERS HOLDINGS INC., RICHARD S. FULD, JR., MICHAEL L. AINSLIE, JOHN F. AKERS, ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT, JERRY A. GRUNDHOFER, ROLAND A. HERNANDEZ, HENRY KAUFMAN, JOHN D. MACOMBER, ERIN M. CALLAN, WENDY M. UVINO, THE EMPLOYEE BENEFIT PLANS COMMITTEE, and JOHN DOES 1-10, | |
| Defendants. | |

[Additional Caption Follows]

MARIA DESOUSA, On Behalf of Herself And
All Others Similarly Situated,

**Civil Action No. 08cv6626 (UA)**

                Plaintiff,

   vs.

LEHMAN BROTHERS HOLDINGS INC.,
RICHARD S. FULD, JR., ERIN M. CALLAN,
WENDY M. UVINO, MICHAEL L. AINSLIE,
JOHN F. AKERS, ROGER S. BERLIND,
THOMAS H. CRUIKSHANK, MARSHA J.
EVANS, SIR CHRISTOPHER GENT, JERRY
A. GRUNDHOFER, ROLAND A.
HERNANDEZ, HENRY KAUFMAN, JOHN
D. MACOMBER, THE EMPLOYEE BENEFIT
PLAN COMMITTEE, THE COMPENSATION
AND BENEFITS COMMITTEE, and JOHN
DOES 1-20,

                Defendants.

1.      I, MARK C. RIFKIN, respectfully submit this Reply Declaration in Further Support of Plaintiffs' Joint Motion to Consolidate Erisa Cases, to Appoint Interim Class Co-Counsel, and for Entry of Pretrial Order No. 1, and in Opposition to Plaintiff Maria DeSousa's Motion for (1) Consolidation, (2) Approval of the Proposed Leadership Structure, (3) Entry of [Proposed] Pretrial Order No. 1 and (4) Response in opposition to the Respective Competing Motions of Plaintiffs Rinehart/Fong and Plaintiff Buzzo.

2.      I am a member of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein" or the "Firm"), and one of the attorneys of record for plaintiff Monique Miller Fong and the proposed class members in the above captioned actions (the "Lehman ERISA Litigation.").

3.      Attached hereto as Exhibit A is a true and correct copy of a press release issued by Milberg LLP on June 18, 2008.

4.      Attached hereto as Exhibit B is a true and correct copy of a press release issued by Schatz Nobel Izard, P.C. on June 23, 2008.

5.      Attached hereto as Exhibit C is a true and correct copy of a press release issued by Harwood Feffer LLP on June 24, 2008.

6.      Attached hereto as Exhibit D is a true and correct copy of *In re DHB Indus., Inc. Derivative Litig.*, Case No. CV-05-4345, Report and Recommendation (E.D.N.Y. Jan. 9, 2006) (D.I. 45).

7.      Attached hereto as Exhibit E is a true and correct copy of the Memorandum of Law in Support of Plaintiff C. Kenneth Coulter's Motion for Consolidation, Appointment as Interim Lead Plaintiff and Interim Co-Lead Counsel, *In re Morgan Stanley ERISA Litig.*, No. 07-11285 (S.D.N.Y. Jan. 9, 2008) (D.I. 14).

8.    Attached hereto as Exhibit F is a true and correct copy of the Memorandum of Law (1) in Opposition to the Motion of C. Kenneth Coulter for Appointment as Interim Lead Plaintiff and Milberg Weiss LLP and Harwood Feffer LLP as Interim Co-Lead Counsel; and (2) in Support of the Motion of Plaintiff Carolyn Egan and John Siefken for Consolidation of the Actions and Appointment of Wolf Haldenstein Adler Freeman & Herz LLP and Schiffrin Barroway LLP as Interim Class Counsel, *In re Morgan Stanley ERISA Litig.*, No. 07-11285 (S.D.N.Y. Jan. 25, 2008) (D.I. 20).

9.    Attached hereto as Exhibit G is a true and correct copy of Pre-Trial Order No.1 Consolidating the Actions and Appointing Interim Class Counsel in *In re Morgan Stanley ERISA Litig.*, No. 07-11285 (S.D.N.Y. Feb.11, 2008) (D.I. 26).

I hereby declare that the foregoing is true and correct.


Dated: August 4, 2008


/s/ Mark C. Rifkin
Mark C. Rifkin


517377

# EXHIBIT A





Site Map | HOME

NEWS ROOM

▸ Become a Member    ▸ Email Alerts    ▸ Company News    ▸ Specialty Newslines    ▸ Search News

NEWS Releases

🔍 SEARCH News

*Source:* Milberg LLP

## Milberg LLP Announces Its Investigation Relating to the Lehman Brothers Holdings, Inc. Savings Plan (401k)

NEW YORK, June 18, 2008 (PRIME NEWSWIRE) -- Attorney Advertising. The law firm of Milberg LLP is investigating possible illegal conduct alleged in class action complaints filed in the Northern District of Illinois against Lehman Brothers Holdings Inc. ("Lehman Brothers" or the "Company") (Nasdaq:LEH) and certain of its officers and directors.

Specifically, Milberg is investigating whether certain fiduciaries of The Lehman Brothers Holdings, Inc. Savings Plan (401k) (the "Plan") may have violated the Employee Retirement Income Security Act of 1974 ("ERISA"). Violations may have occurred in at least two ways: (1) by continuing to offer Lehman Brothers stock as a Plan investment when it was imprudent to do so, and (2) by maintaining the Plan's investment in Lehman Brothers stock in the Plan when it was imprudent to do so.

Notably, according to the complaints, defendants failed to disclose material adverse facts concerning Lehman Brothers financial well-being, business operations and prospects. Specifically, the complaints allege that the Company failed to disclose: (1) the true nature and extent of its exposure to losses in connection with subprime mortgage-backed derivatives; (2) the true nature and extent of its exposure to losses in connection with collateralized debt obligations and the timely writedown of those losses; (3) the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles; and (4) Lehman Brothers had inadequate internal and reporting controls. Milberg is investigating whether, based on the foregoing allegations, Lehman Brothers stock was an imprudent investment for the Plan.

If you have or had an individual account with the Lehman Brothers Holdings, Inc. Savings Plan (401k), and your account holds or held Lehman Brothers common stock, you may have legal claims under ERISA.

Milberg LLP has been representing individual and institutional investors for nearly 40 years and serves as lead counsel in U.S. federal and state courts. Please visit the Milberg website (http://www.milberg.com) for more information about the firm. If you wish to discuss this matter with us, or have any questions concerning your rights and interests with regard to this matter, please contact the following attorneys:

### Blogging/Bookmarking

- Blogger
- Blog Search
- Digg
- del.icio.us
- Google Bookmarks
- Newsvine
- Reddit
- StumbleUpon
- Technorati
- Yahoo MyWeb

### Other News Releases from Milberg LLP

Milberg LLP Announces Its Investigation On Behalf of Certain Investors of Gildan Activewear Inc. - Jul 22, 2008

Milberg LLP Announces Its Investigation Relating to the IndyMac Bank, F.S.B. 401(k) Plan - Jul 21, 2008

Milberg LLP Announces Its Investigation On Behalf of Certain Investors of MGIC Investment Corporation Inc. - Jun 18, 2008

Milberg LLP Announces Filing Of Class Acton Lawsuit Involving Auction Rate Securities Against Citigroup, Inc. -- C - May 16, 2008

Milberg LLP Announces Its Investigation on Behalf of Investors Of Auction Rate

Lori G. Feldman
Milberg LLP
One Pennsylvania Plaza, 49th Fl.
New York, NY  10119-0165
Phone number: (800) 320-5081
Email: contactus@milberg.com
Website: http://www.milberg.com

Attorney Advertising. Prior Results Do Not Guarantee A Similar Outcome.

CONTACT:   Milberg LLP
           (800) 320-5081

---

**Keywords: LEGAL**

Securities Offered by Major
Broker-Dealers - Apr 21, 2008

Milberg Weiss Announces the
Filing of A Class Action Suit on
Behalf of Purchasers of the
Securities of Suprema Specialties
Inc. -- CHEZ - Feb 13, 2002

Milberg Weiss Announces the
Filing of A Class Action Suit on
Behalf of Purchasers of the
Securities of PDI Inc. -- PDII - Feb
13, 2002

Milberg Weiss Announces Class
Action Suit Against Williams
Companies, Inc. and Williams
Communications Group, Inc. --
WMB, WCG - Feb 13, 2002

Milberg Weiss Announces the
Filing of A Class Action Suit on
Behalf of Purchasers of the
Securities of McLeodUSA Inc. --
MCLD - Feb 13, 2002

More >>

© PrimeNewswire, Inc. All Rights Reserved.

# EXHIBIT B

Yahoo! My Yahoo! Mail

Search:

Web Search

**YAHOO!** FINANCE

Welcome, sjfarrellesq
[Sign Out, My Account]

Finance Home - Help

**Prime**Newswire

## Welcome [Sign In]

To track stocks & more, Register

## Financial News

Enter symbol(s)                    Basic      ▼    Get   Symbol Lookup

---

**Press Release**                                    Source: Schatz Nobel Izard, P.C.

# Schatz Nobel Izard, P.C. Announces Investigation of Lehman Brothers Savings Plan

Monday June 23, 1:12 pm ET

HARTFORD, Conn., June 23, 2008 (PRIME NEWSWIRE) -- The law firm of Schatz Nobel Izard, P.C., which is one of the leading firms in the country representing employees who lost money investing in company stock in their 401(k) retirement plans, is investigating potential claims against Lehman Brothers Holdings (``Lehman Brothers'' or the ``Company'') (NYSE:LEH - News) for violations of the Employee Retirement Income Security Act of 1974 (``ERISA''). The investigation involves investments in the Lehman Brothers Savings Plan (the ``Plan'') and whether Lehman Brothers and other administrators of the Plan may have breached their ERISA-mandated fiduciary duties of loyalty and prudence to participants and beneficiaries of the Plan. A breach may have occurred if the fiduciaries failed to manage the assets of the Plan prudently and loyally by investing the assets in Company stock when it was no longer a prudent investment for participants' retirement savings. Specifically, Lehman Brothers and the Plan's other fiduciaries continued to invest in and hold Lehman Brothers stock in the Plan despite the Company's apparent mismanagement of the risk of assets held by the Company and its failure to maintain adequate capital and liquidity.

Schatz Nobel Izard, P.C. is also investigating claims on behalf of those who purchased Lehman Brothers common stock. An action seeking class action status has been filed in the United States District Court for the Southern District of New York on behalf of all persons who purchased Lehman Brothers common stock between September 13, 2006 and June 6, 2008. The action alleges that Lehman Brothers made materially false and misleading statements concerning the Company's financial condition and its exposure to the credit market meltdown.

If you bought Lehman Brothers stock through your Lehman Savings Plan or if you purchased Lehman Brothers common stock between September 13, 2006 and June 6, 2008 and would like to learn more about these claims, please contact Schatz Nobel Izard, P.C. toll-free at (800) 797-5499, or by e-mail at firm@snilaw.com. For more information about Schatz Nobel Izard, please visit our website: http://www.snilaw.com.

*Contact:*

```
Schatz Nobel Izard, P.C.
Wayne T. Boulton
Nancy A. Kulesa
(800) 797-5499
firm@snilaw.com
www.snilaw.com
```

---

Source: Schatz Nobel Izard, P.C.

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 PrimeNewswire. All rights reserved. Redistribution of this content is expressly prohibited without prior written consent. PrimeNewswire makes no claims concerning the accuracy or validity of the information, and shall not be held liable for any errors, delays, omissions or use thereof.

# EXHIBIT C



Site Map | HOME

NEWS ROOM

▸ Become a Member    ▸ Email Alerts    ▸ Company News    ▸ Specialty Newslines    ▸ Search News

## NEWS Releases


SEARCH News



*Source:* Harwood Feffer LLP

## Harwood Feffer LLP Announces Its Investigation Relating to the Lehman Brothers Holdings Inc. Savings Plan 401(k)

NEW YORK, June 24, 2008 (PRIME NEWSWIRE) -- The law firm of Harwood Feffer LLP announces its investigation of possible violations of the Employee Retirement Income Security Act of 1974 ("ERISA") by Lehman Brothers Holdings Inc ("Lehman Brothers") (NYSE:LEH) and certain of its officers, directors, and employees.

Specifically, Harwood Feffer is investigating whether certain fiduciaries of the Lehman Brothers Holdings Inc. Savings Plan (401(k) the "Plan") may have breached their fiduciary duties under ERISA to the Plan and its participants and beneficiaries by continuing to invest the Plan's assets in Lehman Brothers common stock when it was no longer prudent to do so.

On April 29, 2008, a related class action complaint was filed in the Northern District of Illinois against Lehman Brothers asserting violations of the federal securities laws. According to the complaint, Lehman Brothers and certain of its officers, directors and employees failed to disclose material adverse facts concerning the Company's financial well-being, business operations and prospects. Specifically, the complaint alleges that Lehman Brothers failed to disclose: (1) the true nature and extent of its exposure to losses in connection with subprime mortgage-backed derivatives; (2) the true nature and extent of its exposure to losses in connection with collateralized debt obligations and its failure to timely writedown those losses; (3) the inadequate reserves for its mortgage and credit related exposure; (4) the failure to prepare its financial statements in accordance with Generally Accepted Accounting Principles; and (5) the failure to maintain adequate internal and reporting controls. Harwood Feffer is investigating, whether, based on the foregoing allegations, Lehman Brothers common stock was an imprudent investment for the Plan.

### Blogging/Bookmarking

- Blogger
- G Blog Search
- Digg
- del.icio.us
- G Google Bookmarks
- Newsvine
- Reddit
- StumbleUpon
- Technorati
- Yahoo MyWeb

### Other News Releases from Harwood Feffer LLP

Harwood Feffer LLP Announces Its Ongoing Investigation Relating to the Lehman Brothers Holdings Inc. Savings Plan 401(k) - Jul 22, 2008

Harwood Feffer LLP Announces Its Investigation Relating to the American Express Incentive Savings Plan 401(k) - Jun 26, 2008

Harwood Feffer LLP Files Class Action Complaint Against Merck & Co., Inc. for Violations of the Employee Retirement Income Security Act -- MRK - Apr 28, 2008

Harwood Feffer Announces Intensified Investigation On Behalf of Participants and Beneficiaries of the First American Corporation 401(K) Savings Plan - Nov 7, 2007

If you have or have had an individual account with the Lehman Brothers Holdings Inc. Savings Plan (401K), and your account holds or held Lehman Brothers common stock, you may have legal claims under ERISA.

Harwood Feffer has taken a leading role in many important actions on behalf of defrauded Plan participants in 401(k) plans and has recovered hundreds of millions of dollars in those efforts. The Harwood Feffer website (www.hfesq.com) has more information about the firm. If you wish to discuss this action with us or have any questions concerning this notice or your rights and interests with regard to the case, please contact the following:

```
Robert I. Harwood, Esq.
Tanya Korkhov, Esq.
Harwood Feffer LLP
488 Madison Avenue
New York, NY 10022
(877) 935-7400
Email: rharwood@hfesq.com
       tkorkhov@hfesq.com

CONTACT:  Harwood Feffer LLP
          (877) 935-7400
```

**Keywords: LEGAL**

Harwood Feffer Announces an Investigation On Behalf of Participants and Beneficiaries of the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan - Nov 2, 2007

Harwood Feffer LLP Announces Securities Class Action Suit Against American Mortgage Investment Corp. -- AHM - Aug 13, 2007

Harwood Feffer LLP Announces Amended Class Action Suit Against CDW Corporation - Aug 7, 2007

Harwood Feffer LLP Announces Investigation Concerning Sterling Financial Corp. 401(k) Retirement Plan - Jun 22, 2007

Harwood Feffer LLP Announces Securities Class Action Suit Against Wireless Facilities, Inc. -- WFII - Apr 16, 2007

More >>

© PrimeNewswire, Inc. All Rights Reserved.

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MOUSSA YEROUSHALAMI, et al.,
 on behalf of themselves and all others similarly situated,                REPORT AND
                                                                            RECOMMENDATION


                                      Plaintiffs,            CV 05-4296 (JS) (ETB)


             -against-


DHB INDUSTRIES, INC., et al.,


                                      Defendants.
----------------------------------------------------------------------X
JAMIE SUPRINA,
individually and on behalf of all others similarly situated,


                                      Plaintiff,            CV 05-4330 (JS) (ETB)


             -against-


DHB INDUSTRIES, INC., et al.


                                      Defendants.
----------------------------------------------------------------------X
ROBERT PUCEK,
individually and on behalf of all others similarly situated,


                                      Plaintiff,            CV 05-4331 (JS) (ETB)


             -against-


DHB INDUSTRIES, INC., et al.


                                      Defendants.
----------------------------------------------------------------------X
ERNEST GOTTDIENER,
individually and on behalf of all others similarly situated,


                                      Plaintiff,            CV 05-4332 (JS) (ETB)


             -against-

1

DHB INDUSTRIES, INC., et al.

                                   Defendants.
----------------------------------------------------------------------X
THOMAS HUSTON,
Derivatively on behalf of DHB Industries, Inc.,

                                    Plaintiff,                  CV 05-4345 (JS) (ETB)

             -against-

DAVID H. BROOKS., et al.

                                    Defendants.
----------------------------------------------------------------------X
HUI WANG,
individually and on behalf of all others similarly situated,

                                    Plaintiff,                  CV 05-4380 (JS) (ETB)

             -against-

DHB INDUSTRIES, INC., et al.

                                    Defendants.
----------------------------------------------------------------------X
CAROL A. HELM,
Trustee of the Helm Trust dated 9-28-92,
 on behalf of herself and all others similarly situated,

                                    Plaintiff,                  CV 05-4405 (JS) (ETB)

               -against-

DHB INDUSTRIES, INC., et al.

                                    Defendants.
----------------------------------------------------------------------X
BRUCE SIMONS,
individually and on behalf of all others similarly situated,

                                      Plaintiff,                  CV 05-4408 (JS) (ETB)

             -against-

2

DHB INDUSTRIES, INC., et al.

                              Defendants.
----------------------------------------------------------------------X
LSP PARTNERS, LP,
individually and on behalf of all others similarly situated,

                    Plaintiff,                    CV 05-4468 (JS) (ETB)


          -against-

DHB INDUSTRIES, INC., et al.

                              Defendants.
----------------------------------------------------------------------X
DAVID BUSHNELL,
individually and on behalf of all others similarly situated,

                    Plaintiff,                    CV 05-4476 (JS) (ETB)


          -against-

DHB INDUSTRIES, INC., et al.

                              Defendants.
----------------------------------------------------------------------X
TROY COREY,
individually and on behalf of all others similarly situated,

                    Plaintiff,                    CV 05-4491 (JS) (ETB)


          -against-

DHB INDUSTRIES, INC., et al.

                              Defendants.
----------------------------------------------------------------------X
BRIAN ABRAMS,
Derivatively on Behalf of DHB Industries, Inc.,

                    Plaintiff,                    CV 05-4592 (JS) (ETB)

          -against-

3

DAVID BROOKS, et al.

                                Defendants.
-----------------------------------------------------------------------X
ALICIA MOLLER,
individually and on behalf of all others similarly situated,

                        Plaintiff,                    CV 05-4888 (JS) (ETB)

            -against-

DHB INDUSTRIES, INC., et al.

                                Defendants.
-----------------------------------------------------------------------X
GENE CORBETT,
individually and on behalf of all others similarly situated,

                        Plaintiff,                    CV 05-4919 (JS) (ETB)

            -against-

DHB INDUSTRIES, INC., et al.

                                Defendants.
-----------------------------------------------------------------------X
LEMON  BAY PARTNERS LLP,
Derivatively on behalf of DHB Industries, Inc.,

                        Plaintiff,                    CV 05-4951 (JS) (ETB)

            -against-

David H. Brooks., et al.

                                Defendants.
-----------------------------------------------------------------------X
GARY GELMAN,
individually and on behalf of all others similarly situated,

                        Plaintiff,                    CV 05-4886 (JS) (ETB)

            -against-

4

DHB INDUSTRIES, INC., et al.

                                            Defendants.

----------------------------------------------------------------------X

PHILIP MAMOS,
individually and on behalf of all others similarly situated,

                                            Plaintiff,                CV 05-5009 (JS) (ETB)

          -against-

DHB INDUSTRIES, INC., et al.

                                              Defendants.

----------------------------------------------------------------------X

ALVIN VIRAY,
derivatively on behalf of DHB INDUSTRIES, INC.

                                            Plaintiff,                CV 05-5194 (JS) (ETB)

          -against-

DAVID H. BROOKS, et al.

                                            Defendants.

----------------------------------------------------------------------X

NECA-IBEW PENSION FUND (THE DECATUR PLAN),
et al, individually and on behalf of all others
 similarly situated,

                                            Plaintiffs,             CV 05-5209 (JS) (ETB)

          -against-

DHB INDUSTRIES, INC., et al.

                                            Defendants.

----------------------------------------------------------------------X

TO THE HONORABLE JOANNA SEYBERT, UNITED STATES DISTRICT JUDGE:

        Presently before the Court are several motions for consolidation and appointment of lead

plaintiff and lead counsel in fifteen related securities fraud class action lawsuits[1] (the "class

actions") brought on behalf of persons who purchased or otherwise acquired securities of DHB

Industries, Inc. ("DHB") between approximately November 18, 2003 and August 29, 2005.  Also

before the Court are motions for consolidation and appointment of a representative plaintiff and

lead counsel in four related derivative actions[2] (the "derivative actions") brought by DHB

shareholders seeking recovery on behalf of DHB against its officers, directors, and accounting

firm for, inter alia, breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

DHB Industries, Inc., a Delaware corporation with principal offices in Westbury, New

York, is a holding company that manufactures and markets protective body armor through two

divisions, DHB Armor Group and DHB Sports Group.  The class action complaints generally

allege that the defendant officers and directors inflated DHB's stock by issuing a series of false

statements and financial reports, and then sold their stock at inflated prices prior to the

subsequent collapse of the stock based on reports that DHB knowingly sold defective products.

The complaints allege that the defendants' conduct violated §§ 10(b), 20(a) of the Securities

Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation

---

[1]The class actions are: (1) Yeroushalami v. DHB, et al., CV 05-4296; (2) Suprina v. DHB, et al., (3) CV 05-4330; Pucek v. DHB, et al., CV 05-4331; (4) Gottdiener v. DHB, et al., CV 05-4332; (5) Wang v. DHB, et al., CV 05-4380; (6) Helm v. DHB, et al.,  CV 05-4405; (7) Simons v. DHB, et al., CV 05-4408; (8) LSP Partners v. DHB, et al., CV 05-4468; (9) Bushnell v. DHB, et al., CV 05-4476; (10) Corey v. DHB, et al., CV 05-4491; (11) Moller v. DHB, et al., CV 05-4888; (12) Corbett v. DHB, et al., CV 05-4919; (13) Gelman v. DHB, et al., CV 05-4886; (14) Mamos v. DHB, et al., CV 05-5009; and (15) NECA-IBEW Pension Fund v. DHB, et al., CV 05-5209.

[2]The derivative actions are: (1) Huston v. Brooks, et al., CV 05-4345; (2) Abrams v. Brooks, et al., CV 05-4592; (3) Lemon Bay Partners LLP v. Brooks. et al., CV 05-4951; and (4) Viray v. Brooks, CV 05-5194.

Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t(a)-1, and Securities and Exchange

Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.[3]  The allegations in the derivative complaints

arise from the same conduct complained of in the class action suits, and the derivative plaintiffs

claim that the breaches of fiduciary duty caused substantial losses to DHB and damaged its

reputation and goodwill.

On November 7, 2005, the plaintiff in one derivative action and the plaintiffs in one class

action each filed a motion for a temporary restraining order imposing a constructive trust over

the defendants' alleged insider trading proceeds and bonuses.  On November 9, 2005, Judge

Seybert issued an order denying both motions.  At that time, Judge Seybert referred several

pending matters to the undersigned for a Report and Recommendation, including: (1) the

motions for a preliminary injunction; (2) the motions to consolidate; and (3) the motions to

appoint lead plaintiff and lead counsel.  The parties were also directed to appear before the

undersigned to discuss any discovery issues related to the motions for a preliminary injunction.

A conference was held before the undersigned on November 14, 2005.  Prior to the

conference, nine motions to appoint a lead plaintiff or lead plaintiffs and lead counsel had been

filed.  Following the conference, four groups of proposed lead plaintiffs withdrew their motions

for the appointment of lead plaintiffs and lead counsel, and two groups who had previously filed

separate motions combined their motions.  Accordingly, this Report addresses the motions to

consolidate, the four remaining motions to appoint lead plaintiff(s) and lead counsel in the class

actions, and the two motions to appoint a representative plaintiff and lead counsel in the

---

[3]Two of the complaints, <u>Suprina v. DHB, et al.</u> and <u>NECA-IBEW Pension Fund v. DHB, et al.</u> also allege violations of Section 20A of the Exchange Act, 15 U.S.C. § 78t-1(a).

derivative actions.[4]

DISCUSSION

I.    Consolidation

    A.    Consolidation of the Class Actions

Securities fraud class actions are governed by, inter alia, the Securities Exchange Act of 1934 (the "Exchange Act"),and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which amended the Exchange Act.  The PSLRA dictates that prior to the appointment of a lead plaintiff, the Court must decide whether or not to consolidate the actions. See 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Under Federal Rule of Civil Procedure 42(a), actions may be consolidated when they involve a common question of law or fact.  Rule 42(a), Fed. R. Civ. P. "[C]ourts have taken the view that considerations of judicial economy favor consolidation." Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 250 (1990).  In securities actions, "where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998).

Here, all of the plaintiffs agree that the class actions should be consolidated, and the defendants take no position on the issue.  All of the actions assert claims on behalf of the purchasers and acquirers of DHB securities for alleged violations of the Exchange Act during the same time period.  All of the complaints name DHB and certain of its officers and/or directors as

---

[4]At the November 14, 2005 conference, the parties agreed to wait for a decision on the motions to consolidate and appoint lead plaintiff and lead counsel before fully briefing the two pending motions for a preliminary injunction.

8

defendants, and all of the complaints involve the same factual and legal issues.  Accordingly, the

test for consolidation set forth in Rule 42(a) has been met, and I recommend that the fourteen

class actions be consolidated under the caption In Re DHB Industries, Inc. Securities Litigation,

and that all documents related to this action be filed under case number CV 05-4296.

         B.     Consolidation of the Derivative Actions

       As with securities class actions, consolidation of related shareholder derivative actions is

appropriate under Rule 42(a) when the actions involve common questions of law and fact.  See

MacAlister v. Guterma, 263 F. 2d 65, 68 (2d Cir. 1958) (stating that consolidation of derivative

lawsuits and the appointment of counsel "may in many instances prove the only effective means

of channeling the efforts of counsel along constructive lines").  All of the plaintiffs in the

derivative actions argue that the derivative actions should be consolidated, and the defendants

take no position on the issue.  Each of the derivative complaints asserts claims by a DHB

shareholder on behalf of DHB, and alleges that defendants' breaches of their fiduciary duties

caused substantial losses to DHB.  I agree that consolidation of these actions is proper under

Rule 42(a) and will promote efficient litigation.

       The derivative plaintiffs contend that the derivative actions should not, however, be

consolidated with the class action.  The class plaintiffs take no position on the issue.  The

derivative plaintiffs assert that, despite some similarity, the derivative actions and securities

fraud class actions do not involve common questions of law and fact such that the actions should

be consolidated under Rule 42(a).  (Mem. of Law in Supp. of Pl. Huston's Mot. to Consolidate

All Related Shareholder Derivative Actions and Appoint a Leadership Structure for Pls.

("Huston Mem."), at 3-5; Pl. Brian Abrams's Mem. in Supp. of his Mot. to Consolidate the

Related Shareholder Derivative Actions and Appoint Lead Counsel for Pls. ("Abrams Mem."), at 12-13); Derivative Pl. Lemon Bay Partners LLP's Mem. of Law Regarding Consolidation and Appointment of a Pls.' Lead Counsel Structure ("Lemon Bay Mem."), at 2-4.) Specifically, the derivative plaintiffs argue that (1) the class action is subject to the PSLRA, whereas derivative actions are not; (2) the class action plaintiffs are required to undertake the class certification process, whereas the derivative plaintiffs are not; (3) the derivative action will likely require the Court to perform a demand futility analysis as to whether a demand on DHB's board of directors would have been futile based upon the facts alleged in the derivative complaint, an issue which is irrelevant to the class action; and (4) generally, the actions will involve some different discovery and testimony, particularly because the class action plaintiffs must demonstrate the defendants' intent to make false and misleading statements, whereas the derivative plaintiffs must prove that the defendants failed to fulfill their fiduciary obligations, regardless of intent. (Huston Mem. at 4; Abrams Mem. at 13.) The derivative plaintiffs also contend that the different interests represented by the plaintiffs in the class action, who have named the corporation as a defendant, and the plaintiffs in the derivative action, who are suing on behalf of the corporation, present a potential conflict of interest that would prejudice all plaintiffs. (See e.g., Huston Mem. at 3.)

While there is no per se rule against the consolidation of direct and derivative actions and the appointment of a lead plaintiff and lead counsel for both, the court should strictly scrutinize any potential conflict which may arise from such an arrangement. Levine v. Am. Exp. Indus., Inc., 473 F. 2d 1008, 1009 (2d Cir. 1973) (dismissing the appeal of securities fraud class action plaintiffs from district court's interlocutory order consolidating class action with derivative suits,

but noting that "[i]n the event that a conflict of interest looms upon the horizon, the appointment of separate counsel for each group (class and derivative plaintiffs) may well be advisable"); Ryan v. Aetna Life Ins. Co., 765 F. Supp. 133, 135 (S.D.N.Y. 1991). In particular, some courts have questioned how an attorney can properly represent the interests of a corporation and its shareholders in a derivative action while simultaneously representing the interest of shareholders in a class action against the corporation, because the two groups of clients have potentially conflicting interests. Koenig v. Benson, 117. F.R.D. 330, 334 (E.D.N.Y. 1987) (citing Stull v. Baker, 410 F. Supp. 1326, 1336-37 (S.D.N.Y. 1976); Ruggiero v. Am. Bioculture, Inc., 56 F.R.D. 93, 95 (S.D.N.Y. 1972) (additional citations omitted)). See also Kamerman v. Steinberg, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) ("Prosecution of both a derivative and class action by plaintiffs. . .presents an impermissible conflict of interest. . . ."). In a stockholder's derivative suit, unlike in a class action, the stockholder has no claim of his own, "he merely has a personal controversy with his corporation regarding the business wisdom or legal basis for the latter's assertion of a claim against third parties. Whatever money or property is to be recovered would go to the corporation, not a fraction of it to the stockholder." Papilsky v. Berndt, 466 F.2d 251, 255 (2d Cir. 1972). Accordingly, courts in this jurisdiction generally do not consolidate securities fraud class actions with related derivative actions. See, e.g., In re Computer Assocs. 2002 Class Action Sec. Litig., CV 02-1226 (E.D.N.Y. July 25, 2002) and Computer Assocs. Int'l, Inc., Derivative Litig., CV 04-2697 (E.D.N.Y October 19, 2004); In re NBTY, Inc. Sec. Litig., CV 04-2619 (March 17, 2005) and In re NBTY, Inc. Derivative Litig., CV 04-2876 (E.D.N.Y. Oct. 5, 2004).

Thus, I recommend that the derivative actions be consolidated with one another under the

11

caption In Re DHB Industries, Inc. Derivative Litigation, and that all documents related to this

action be filed under case number CV 05-4345. I do not recommend, however, that the

derivative action be consolidated with the class action.  At the initial conference, the parties

should be prepared, however, to address the issue of consolidation for purposes to further the

interests of economy and efficiency.

II.    Appointment of Lead Plaintiffs and Lead Counsel

    A.    Lead Plaintiffs and Lead Counsel in the Class Action

The four pending motions to appoint lead plaintiff(s) and lead counsel in the class action

lawsuits are as follows:

> (1) Motion by "Fuller & Thaler" (comprised of Fuller & Thaler Asset
> Management, Inc.), alleging losses in the amount of $640,580.00,  to appoint
> Fuller & Thaler as lead plaintiff and the firm of Bernstein Liebhard & Lifshitz,
> LLP as lead counsel;
>
> (2) Motion by the "DHB Lead Plaintiff Group" (comprised of Jon Albinson,
> Mitchell Cohen, Herb Hertner, Son Dinh and Lon Worth Crow IV), alleging
> losses in the amount of $858,182.14, to appoint the DHB Lead Plaintiff Group as
> lead plaintiff and the firms of Milberg Weiss Bershad & Schulman LLP and
> Chitwood Harley Harnes LLP as co-lead counsel;
>
> (3) Motion by the "DHB Investor Group" (comprised of Andrew Benavides,
> Gordon Dole and James Bates), alleging losses in the amount of $1,132, 892.99,
> to appoint the DHB Investor Group as lead plaintiff and the firm of Scott + Scott
> LLC as lead counsel;

(4) Joint Motion by the DHB Industries Investors Group and the RS Holdings

group, hereinafter, the "DHB Industries /RS Holdings Group" alleging losses in

the amount of $3.6 million dollars, to appoint RS Holdings, NECA-IBEW

Pension Fund (the "Decatur Plan"), and George Baciu, as lead plaintiffs, and the

firms of Lerach Coughlin Stoia Geller Rudman & Robbins ("Lerach Coughlin")

and Labaton Sucharow & Rudoff LLP ("Labaton Sucharow") as co-lead counsel[5]

Finally, it is noted that after the conference on November 14, 2005, three groups of

plaintiffs who had filed motions to be appointed lead plaintiff and to select lead counsel

---

[5]        Notably, with respect to group four, despite changes in the composition of the
proposed group of lead plaintiffs made following the November 14, 2005 conference, neither the
DHB Industries Investor Group nor the RS Holdings Group revised its calculation of alleged
losses.  In its initial moving papers, the DHB Industries Investors Group, comprised of NECA-
IBEW Pension Fund (the "Decatur Plan"), George Baciu, and Brian Gordon, alleged losses of
approximately $3.37 million dollars.  (Declaration of Mario Alba, Jr. ("Alba Decl.") in Support
of the DHB Industries Investors Group's Motion for Consolidation, Appointment as Lead
Plaintiff and Approval of Lead Plaintiff's Selection of Lead Co-Counsel, Exh. C.)  Specifically,
the DHB Industries Investors Group alleged that member NECA-IBEW Pension Fund lost
$32,254.26, member George Baciu lost $2,125,056.50, and member Brian Gordon lost
$1,216,785.58.  The revised proposed order filed jointly by the DHB Industries Investors Group
and the RS Holdings Group, however, makes no mention of Brian Gordon.  (Stipulation and
[Proposed] Order on Consolidation of Related Actions, Appointment as Lead Plaintiff and
Approval of Proposed Lead Plaintiff's Selection of Lead Counsel ("Proposed Order"), ¶ 9) ("RS
Holdings LLC, the Decatur Plan, and George Baciu are hereby appointed lead plaintiffs in the
Consolidated Action.").

        Similarly, in its initial moving papers, the RS Holdings Group, comprised of Robino
Stortini Holdings, LLC ("RS Holdings"), William Chaplin, Mr. & Mrs. Eberhard W. Pfaller, and
Harvey Schefren, alleged losses of approximately 2.26 million dollars.   Specifically, the RS
Holdings Group alleges that member RS Holdings lost $1,443,167.36, member William Chaplin
lost $287,399.00, members Mr. & Mrs. Eberhard W. Pfaller lost $304,875.00, and member
Harvey Schefren lost $229,401.00.  The revised proposed order filed jointly by the RS Holdings
Group and the DHB Industries Investors Group, however, only mentions RS Holdings as a
proposed lead plaintiff.  (Proposed Order, ¶ 9) ("RS Holdings LLC, the Decatur Plan, and
George Baciu are hereby appointed lead plaintiffs in the Consolidated Action.").

withdrew their motions: (1) Michael Kantrowitz and David Parnigan (who allege losses in the amount of $695,467.00); (2) the "Laustsen Investors Group" (who allege losses in the amount of $729, 944), and (3) the "Dyer Group" (who allege losses in the amount of $521,703.88). These three groups state that they do not oppose the motion submitted by the DHB Industries Investors Group (which, at the time of their withdrawal, had not yet joined with the RS Holdings Group), but reserve their rights to present themselves as substitute lead plaintiffs if the DHB Industries Investors Group is not appointed lead plaintiff.

As soon as practicable after reaching a decision on consolidation, a Court must appoint a lead plaintiff or plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The PSLRA, which altered the procedures for bringing a class action under federal securities law, sets forth a detailed procedure for the selection of a lead plaintiff or plaintiffs to oversee securities class actions brought pursuant to the federal securities law. See 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(I). See also H.R. Rep. No. 104-369, at 32 (1995), reprinted in 1996 U.S.C.C.A.N. at 731 (Congress enacted the PSLRA to eliminate the plaintiffs' lawyers' race to the courthouse and to instead "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel.")

The PSLRA provides that first, the plaintiff who files the initial action must within twenty days of filing the action publish a notice informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(I). Here, the relevant

notice was published on <u>Business Wire</u> on September 9, 2005.[6]  The PSLRA next provides that

within sixty days after publication of the required notice, any person or group of persons who are

members of the proposed class may apply to the Court to be appointed lead plaintiff or lead

plaintiffs, whether or not they previously filed a complaint in the action.  15 U.S.C. § 78u-

4(a)(3)(A) and (B).  Here, all of the motions to be appointed lead plaintiff or lead plaintiffs have

been timely filed.  The PSLRA further requires the Court to appoint lead plaintiff within ninety

days after publication of the initial notice of pendency.  <u>See</u> 15 U.S.C. § 78u-4(a)(3)(B).  In

determining who is the "most adequate plaintiff," the PSLRA states:

> [T]he court shall adopt a presumption that the most adequate
> plaintiff in any private action arising under this title is the person
> or group of persons that–
>
>> (aa) has either filed the complaint or made a motion in
>> response to a notice. . .
>>
>> (bb) in the determination of the court, has the largest
>> financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the
>> Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "Congress 'intend[ed] that the lead plaintiff provision will

encourage institutional investors to take a more active role in securities class action lawsuits.'"

<u>In re Oxford Health Plans, Inc., Sec. Litig.</u>, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (quoting H.R.

Rep. No. 104-369 at 34 (1995) (<u>reprinted in </u>1996 U.S.C.C.A.N. 730)).

    The presumption that a proposed plaintiff who meets the statutory requirements is the

---

[6]The first action against DHB, <u>Yeroushalami, et al. v. DHB Industries, Inc. et al.</u>, CV 05-
4296, was filed on September 9, 2005.

most adequate plaintiff may only be rebutted by proof of a member of the purported plaintiff

class that the presumptively most adequate plaintiff "will not fairly and adequately represent the

members of the class," or "is subject to unique defenses that render such plaintiff incapable of

adequately representing the class." 15 U.S.C. § 78u-4(a0(3)(B)(iii)(II). Here, all of the moving

parties have either filed a complaint or motion in response to the notice, and all have filed

affidavits detailing their respective financial interests in the relief sought by the class.

In addition to filing a complaint or a motion in response to a notice and possessing the

largest financial interest in the relief sought, the lead plaintiff or plaintiffs must otherwise satisfy

the requirements of Federal Rule of Procedure 23: (1) numerosity; (2) commonality; (3)

adequacy; and (4) typicality. Rule 23(a), Fed. R. Civ. P. District courts in the Second Circuit

have noted, however, that of the four Rule 23 requirements, "only adequacy and typicality come

into play when determining an lead plaintiff under the PSLRA." In Re Star Gas Sec. Litig., No.

3:04cv1766, 2005 U.S. Dist. LEXIS 5827, at *9 (D. Conn. April 8, 2005) (citing Constance

Sczeny Trust v. KPMG, LLP, 223 F.R.D. 319, 324 (S.D.N.Y. 2004), In re Oxford Health Plans,

Inc., Sec. Litig., 182 F.R.D. 42, 50 (S.D.N.Y. 1998), appeal dismissed sub nom. Metro Servs.

Inc. v. Wiggins, 158 F.3d 162 (2d Cir. 1998)).

Typicality, as required by Rule 23(a)(3), exists if the claims arise "from the same course

of events, and each class member makes similar legal arguments to prove the defendant's

liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert.

dismissed, 506 U.S. 1088 (1993). In this instance, all of the moving plaintiffs claim that they

purchased or acquired DHB securities during a specific time period, paid inflated prices, and

suffered damages. The common legal theory is a breach of Sections 10(b) and 20(a) of the

16

Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5.

Thus, for the present purposes, all of the movants appear to be typical members of the class, and typicality is not disputed among the competing movants.

Adequacy of representation, as required by Rule 23(a)(4), requires that the representative party fairly and adequately represent the interests of the class. In conducting this inquiry, the court examines whether there are any conflicts between the interests of the proposed lead plaintiffs and the members of the class, and whether class counsel is "'qualified, experienced and generally able' to conduct the litigation." Id. at 291 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968)). Here, all of the movants have demonstrated that their interests are aligned with those of the class, and all movants have proposed the appointment of class counsel who are qualified and experienced. The adequacy of the proposed lead plaintiffs is not disputed among competing movants.

Indeed, the factor that most significantly distinguishes the proposed lead plaintiffs, and the factor the Court is directed to consider under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), is the financial relief sought by each movant, based on the proposed lead plaintiffs' amount of alleged loss. Here, the members of the DHB Industries/RS Holdings Group allege losses in the amount of approximately $3.36 million dollars. As the group with the greatest alleged losses, the DHB Industries/RS Holdings Group is presumptively the most adequate plaintiff under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Of the three other movants, neither the DHB Lead Plaintiff Group, alleging losses in the amount of $858,182.14, nor the DHB Investor Group, alleging losses in the amount of $1,132, 892.99, filed opposition to the DHB Industries/RS Holdings Group motion, thereby failing to rebut the statutory presumption in favor of the DHB

17

Industries/RS Holdings Group.[7]

The only group to file opposition to the motion by the DHB Industries/RS Holdings

Group is Fuller & Thaler.  Fuller & Thaler, an independent investment advisory firm, contends

that courts have noted a Congressional preference for the appointment of institutional investors

as lead plaintiffs in securities class actions, and that it is the institutional investor who has

suffered the largest loss (over $640,000).  (Mem. of Law in Supp. of the Mot. of Fuller & Thaler

Asset Management, Inc. for Consolidation, Appointment as Lead Plaintiff and Approval of

Selection of Lead Counsel, and in Opposition to All Competing Motions ("Fuller & Thaler

Mem. in Opp'n"), at 3-6.)  Fuller & Thaler argues that because RS Holdings, which states that it

is an institutional investor with losses in the amount of $1.44 million,  is a portfolio managed for

the family and friends of the Frank Robino Companies, LLC, it is "not truly an institutional

investor."  (Id. at 6.)  Fuller & Thaler also argues that the DHB Industries/RS Holdings Group is

a lawyer-driven group, lacking cohesion, cobbled together to manufacture the largest financial

interest in the action, and should therefore be rejected as lead plaintiff.  (Id. at 7, noting that one

of the principal purposes of the PSLRA was to prevent lawyer-driven litigation; see also Reply

Mem. of Law in Further Supp. of the Motion of Fuller & Thaler Asset Management, Inc. for

Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, and in

Further Opposition to All Competing Motions ("Fuller & Thaler Reply Mem."), at 2-3.)  Finally,

Fuller & Thaler argues that, unlike RS Holdings, it has overseen sizable recoveries as lead

---

[7] The DHB Lead Plaintiff Group filed a memorandum noting discrepancies among the
class periods alleged in the various complaints; however, the memorandum set forth no facts or
argument to rebut the statutory presumption.  The appropriate class period will be determined
upon the filing of the amended complaint.

18

plaintiff in several securities class actions. (Fuller & Thaler Mem. in Opp'n, at 6, citing five securities class actions with which it has been involved.)

The DHB Industries/RS Holdings Group disputes each of Fuller & Thaler's contentions. It argues that RS Holdings is an institutional investor that, like Fuller & Thaler, invests millions of dollars in assets on behalf of individuals and businesses that invest in its fund. (Mem. of Points and Authorities in Response to the Opposition Memorandum Filed by Fuller & Thaler Asset Management Concerning the Motions for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("DHB Industries/RS Holdings Group Mem."), at 2.) Fuller & Thaler's argument that RS Holdings is not an institutional investor simply because it is managed for individuals associated with one company is not persuasive. The DHB Industries/RS Holdings Group further argues that not only does the group include the institutional investor with the largest financial interest– RS Holdings, with an alleged approximate loss of $1.44 million– it also includes George Baciu, an individual whose alleged losses in the amount of approximately $2.1 million dollars represent the single largest financial interest of all the movants. (Id. at 2-3.) Finally, the DHB Industries/RS Holdings Group argues that both NECA-IBEW and RS Holdings have experience serving as lead plaintiffs in securities class actions (Id. at 3, citing Certification of Michael Stortini, Principal of RS Holdings, ¶ 5 (citing one case in which RS Holdings was appointed as lead plaintiff); Certification of NECA-IBEW,¶ 5 (citing three cases in which NECA-IBEW was appointed as lead plaintiff). The DHB Industries/RS Holdings Group's briefs and affidavits support these arguments.

Accordingly, I find that Fuller & Thaler has not sufficiently rebutted the statutory presumption in favor of the DHB Industries/RS Holdings Group, as the group with the largest

financial loss, and presumed to be the most adequate plaintiff.  In its attempt to rebut this

presumption, Fuller & Thaller did not offer convincing proof that the DHB Industries/ RS

Holdings Group will fail to fairly and adequately represent the class.  I find, rather, that the DHB

Industries/RS Holdings Group, comprised of the institutional investor with the largest loss (RS

Holdings), the individual investor with the largest loss (George Baciu), and a pension fund

(NECA-IBEW), will effectively represent the interests of the class, as well as fulfill the purpose

of the PSLRA.  See In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 46 (S.D.N.Y.

1998) (appointing as lead plaintiffs in a securities class action two institutional investors and a

group of three individuals, noting that the appointment of institutional investors is specifically

encouraged by the PSLRA, and the scope of the individuals' losses makes the individuals an

effective monitor of its counsels' performance).

Based on the foregoing, I recommend that RS Holdings, NECA-IBEW Pension Fund (the

"Decatur Group"),and George Baciu be appointed lead plaintiffs in the consolidated class action

lawsuit.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court

approval, select and retain counsel to represent the class it seeks to represent.  15 U.S.C. § 78u-

4(a)(3)(B)(v).  The court's role is generally limited to approving or disapproving lead plaintiff's

choice of counsel.  In Re Star Gas Sec. Litig., No. 3:04cv1766, 2005 U.S. Dist. LEXIS 5827, at

*9-10 (D. Conn. April 8, 2005) (citations omitted).  Both Lerach Coughlin and Labaton

Sucharow, the firms selected by RS Holdings, NECA-IBEW Pension Fund, and George Baciu,

appear qualified to capably represent the plaintiffs in the class action litigation.  Accordingly, I

recommend that the firms of Lerach Coughlin and Labaton Sucharow be appointed as co-lead

counsel in this action.

B.    Representative Plaintiff and Lead Counsel in the Derivative Action

The two pending motions to appoint a representative plaintiff and lead counsel in the derivative actions are as follows:

(1) Motion by Thomas Huston ("Huston") to be named representative plaintiff and to appoint the Law Offices of Thomas G. Amon and the law firm of Robbins Umeda & Fink, LLP ("Robbins Umeda") as Co-Lead Counsel

(2) Motion by Brian Abrams ("Abrams") to appoint the law firm of Wechsler Harwood LLP ("Wechsler Harwood") as Lead Counsel

On December 15, 2005, plaintiff Alvin Viray withdrew his previously submitted motion and declared support in favor of the appointment of Huston as lead plaintiff and the Law Offices of Thomas G. Amon and the firm of Robbins Umeda as co-lead counsel. (Reply Mem. of Law in Supp. of Pl. Viray's Mot. to Consolidate Related Shareholder Derivative Actions and Appoint a Leadership Structure for Pls. ("Viray Mem."), at 4.) On November 28, 2005, plaintiff Lemon Bay Partners LLP, which had not previously filed a motion for appointment of lead plaintiff or lead counsel, submitted support in favor of Wechsler Harwood as lead counsel. Both Huston and Abrams oppose each others' motions.[8]

---

[8]By letter dated December 21, 2005, counsel for Abrams took the unusual step of submitting the transcript of oral argument before the Honorable Walker D. Miller of the United States District Court , District of Colorado, wherein Judge Miller selected Wechsler Harwood as lead counsel over Robbins Umeda in a derivative action. (Letter from Samuel K. Rosen to the undersigned, dated December 21, 2005.) The submission, filed after briefing had been completed and without leave of the Court, has not been afforded any weight in this Report and Recommendation. However, even if given full consideration, it would not alter the conclusion reached herein, which is based solely on the facts presented here.

21

1.    No Appointment of Lead Plaintiff

It is noted at the outset that the derivative action is not governed by the PSLRA, which requires the Court to appoint a lead plaintiff or plaintiffs in a securities fraud class action. Rather, derivative actions must comply with Federal Rule of Procedure 23.1, which requires only that a plaintiff in a derivative action "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Rule 23.1, Fed. R. Civ. P.  While Rule 23.1 does not make reference to the appointment of a lead plaintiff, presumptively because the plaintiff or plaintiffs in a derivative action are bringing claims on the company's behalf, the Advisory Committee Notes to Rule 23.1 make clear that "[t]he court has inherent power to provide for the conduct of the proceedings in a derivative action, including the power to determine the course of the proceedings. . . ." Advisory Committee Notes to Rule 23.1, Fed. R. Civ. P.  Thus, although the rule may contemplate the appointment of a "lead" or "representative" plaintiff in this action, the parties here did not provide any case law from this Circuit in support of this contention.  Indeed, the preferred practice in this Court is to consolidate derivative actions and appoint lead counsel without appointing a lead or representative plaintiff.  See, e.g., Computer Assocs. Int'l, Inc., Derivative Litig., CV 04-2697 (E.D.N.Y October 19, 2004); In re NBTY, Inc. Derivative Litig., CV 04-2876 (E.D.N.Y. Oct. 5, 2004); Scalisi v. Fund Asset Mgmt., L.P., CV 02-5592 (E.D.N.Y. Jan. 31, 2003).

Further, although there appears to be no per se rule against the appointment of a lead plaintiff in cases such as this one, the Second Circuit's discussion of the benefits of consolidation in derivative actions makes no mention of the appointment of lead plaintiff.  Rather, the court

22

notes: "An order consolidating such [derivative actions] during the pre-trial stages, <u>together with</u>
<u>the appointment of a general counsel</u>, may in many instances prove the only effective means of
channeling the efforts of counsel. . . ." <u>MacAlister v. Guterma</u>, 263 F.2d 65, 68 (2d Cir. 1958)
(emphasis added).  The court went on to note that the "benefits achieved by consolidation and
the appointment of general counsel, i.e., elimination of duplication and repetition and in effect
the creation of a coordinator of diffuse plaintiffs through whom motions and discovery
proceedings will be channeled, will most certainly redound to the benefit of all parties to the
litigation."  <u>Id.</u> at 69.  In addition, the Second Circuit has emphasized that a stockholder's
derivative action "consists of only one claim– the corporate claim against the alleged
wrongdoers. . . [t]his right to conscript the corporation as a complainant cannot be equated with a
cause of action against the corporation. . .[r]ather than initiating a cause of action against the
corporation, the plaintiff stockholder in a derivative suit is seeking to enforce, for the benefit of
the corporation, a corporate claim which the corporation, for whatever reason, is unwilling to
prosecute."  <u>Papilsky v. Berndt</u>, 466 F.2d 251, 255-56 (2d Cir. 1972), <u>cert. denied</u>, 409 U.S.
1077, 93 S. Ct. 689 (1972).

Accordingly, I find that the appointment of a lead plaintiff is unnecessary and
inappropriate in the derivative action, and I therefore do not recommend the appointment of
either Abrams or Huston as lead plaintiff.  <u>See, e.g., Computer Assocs. Int'l, Inc., Derivative</u>
<u>Litig.</u>, CV 04-2697 (E.D.N.Y October 19, 2004) (consolidating derivative actions and appointing
lead counsel without appointing a lead plaintiff); <u>In re NBTY, Inc. Derivative Litig.</u>, CV 04-
2876 (E.D.N.Y. Oct. 5, 2004) (same); <u>Scalisi v. Fund Asset Mgmt., L.P.</u>, CV 02-5592 (E.D.N.Y.
Jan. 31, 2003) (same). I instead recommend that lead counsel be charged with the orderly and

23

efficient prosecution of the action on behalf of all the stockholders.

        2.    <u>Appointment of Lead Counsel</u>

Two motions seeking the appointment of lead counsel remain pending before the Court.

The Law Office of Thomas G. Amon and the firm of Robbins Umeda Fink, LLP ("Robbins

Umeda") (representing plaintiff Huston) have filed a motion to be appointed co-lead counsel,

and the firm of Wechsler Harwood LLP ("Wechsler Harwood") (representing plaintiff Abrams)

has also filed a motion seeking lead counsel designation.  Both moving parties rely primarily on

the same three district court cases, from outside Circuits, which set forth the standards some

courts have used in determining lead counsel.  (Abrams Mem. at 9-10; Huston Mem. at 2-3.)  In

the cited cases, the court considered: (1) the quality of the pleadings; (2) the vigorousness of the

prosecution of the lawsuits; and (3) the capability of counsel.  <u>Millan v. Brinkley</u>, 2004 WL

228505, at *3-4 (N.D. Ga. Oct. 1, 2004); <u>Dollens v. Zionts</u>, 2001 WL 1543524, at *4 (N.D. Ill.

Dec. 4, 2001); <u>TCW Tech. Ltd. P'ship v. Intermedia Commc'ns</u>, 2000 WL 1654504, at *4 (Del

Ch. Oct. 17, 2000).  Both parties additionally suggest that the court take into consideration

factors more typically considered in the context of the appointment of a lead plaintiff in a class

action, such as the number, size, and extent of involvement of represented litigants, the advanced

stage of the proceeding, and the nature of the causes of action alleged.  (Abrams Mem. at 10;

Huston Mem. at 7.)  At least one district court in this circuit, however, has discouraged the

reliance on analogy to class actions, stating that "[d]ifferences between derivative and class

actions, however, make clear that some factors used to evaluate class representatives are

irrelevant when shareholders litigate for a corporation's benefit."  <u>Schneider v. Austin</u>, 94 F.R.D.

44, 46 (S.D.N.Y. 1982).

Courts in this Circuit typically review a derivative plaintiff's adequacy under Rule 23.1 upon the filing of a dispositive motion by a defendant, and have developed an analysis which is useful for the present purposes. In <u>Sweet v. Bermingham</u>, a leading case, the court reviewed a motion to dismiss based on the ground that the plaintiff did not fairly and adequately represent the interests of the other shareholders. <u>Id.</u> The court there held that

> when a derivative plaintiff demonstrates to the court an intent and desire to vigorously prosecute the underlying corporate claim and when he has engaged competent counsel to assist in that endeavor, then, absent either a conflict of interest which goes to the forcefulness of the prosecution or the existence of antagonism between the plaintiff and other shareholders arising from differences of opinion concerning the best method of vindicating the corporate claim, the representation requirement of Rule 23.1 is met.

<u>Sweet v. Bermingham</u>, 65 F.R.D. 551, 554 (S.D.N.Y. 1975).

Thus, the "'fair and adequate representative' inquiry focuses on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interest of the minority stockholders." <u>Cohen v. Bloch</u>, 507 F. Supp. 321, 324 (S.D.N.Y. 1980). Further, "an essential concomitant of adequate representation is that the party's attorney be qualified, experienced, and generally able to conduct the proposed litigation." <u>Sweet</u>, 65 F.R.D. at 555 n.4 (citing <u>Eisen v. Carlisle & Jacquelin</u>, 391 F. 2d 555, 562 (2d Cir. 1968)). In sum, in determining whether a particular plaintiff is capable of maintaining a shareholders' derivative action, courts have required that the representative plaintiff demonstrate: "(1) a desire to vigorously prosecute the underlying corporate claim, (2) engagement of competent counsel to assist in that endeavor, and (3) absence of 'either a conflict of interest which goes to the forcefulness of the prosecution or the existence of antagonism between the plaintiff and other shareholders arising from differences of opinion concerning the best method of vindicating the corporate claims.'" <u>Zamer</u>

25

v. Diliddo, No. 97-CV-32S, 1999 WL 606731, at * 4 (W.D.N.Y. March 23, 1999) (citing Sweet, 65 F.R.D. at 554 (additional citations omitted)).

Upon taking these factors into consideration, plaintiff Huston and his counsel from the Law Offices of Thomas G. Amon and the firm of Robbins Umeda have the edge.  Plaintiff Huston and his counsel demonstrated a desire to vigorously prosecute the underlying claim by filing a declaration by Huston personally attesting to his willingness to take an active roll in this litigation (plaintiff Abrams filed no such declaration).  (See Huston Declaration.)  Further, plaintiff Huston was the first of the derivative plaintiffs to file his complaint, which, while not a dispositive factor, merits consideration where, as here, both movants appear to be capable of fairly and adequately representing the shareholders.  See Biondy v. Scrushy, 820 A.2d 1148, 1159 (Del. Ch. 2003) (the "first-filed factor typically becomes decisively important only when: (1) a consideration of other relevant factors does not tilt heavily in either direction and there is a need for an objective tie-breaker. . . .").  See also Armstrong v. Doyle, 20 Misc. 2d 1087, 1088-89 (N.Y. Sup. Ct. 1959) (noting that in designating lead counsel in a derivative action, the court should consider the "wishes of the one who first brought suit," while ultimately making its decision on the basis of the competency and experience of the attorneys).  Plaintiff Huston and his diligent counsel also amended Huston's complaint upon the discovery of a waiver signed by defendant Hatfield, wherein she allegedly constructively acknowledged that the DHB vests containing Zylon failed to meet the Marine Corp's minimum test standards.  (Huston Mem. at 9; see also Huston Verified Amended Shareholder Deriv. Compl. and Jury Demand ("Huston Am. Compl."), Exh. A.)  Huston alleges that on the day before and the day after this waiver, the defendants sold over $83 million in company stock, before the truth regarding the defects in the

26

DHB vests was revealed to the public. (Huston Am. Compl. ¶¶ 6-7, 78(a)(vii).) As noted by Huston, Abrams' complaint makes no mention of this potentially significant piece of evidence.

For the foregoing reasons, the Court is satisfied that Huston and his legal team will diligently pursue this derivative action on behalf of the DHB shareholders. The legal team assembled– consisting of two law firms– the Law Offices of Thomas Amon and the firm of Robbins Umeda– have extensive experience in class actions and in pursuing shareholder derivative actions in New York and elsewhere in the state and federal court across the country.[9] (See Declaration of Thomas G. Amon in Support of Pl. Huston's Mot. to Consolidate All Related Shareholder Derivative Actions and Appoint a Leadership Structure for Plaintiffs, at 1-3.)

Accordingly, I recommend that the Law Offices of Thomas Amon and the firm of Robbins Umeda be appointed co-lead counsel in the derivative action.

CONCLUSION

Based on the foregoing, I recommend that the fifteen class action lawsuits be consolidated under the caption In Re DHB Industries, Inc. Securities Litigation, CV 05-4296, and that the four related derivative actions be consolidated under the caption In Re DHB Industries, Inc. Derivative Litigation, CV 05-4345. I further recommend that RS Holdings, NECA-IBEW Pension Fund (the "Decatur Group"), and George Baciu be appointed lead plaintiffs in the class action, and that the law firms Lerach Coughlin Stoia Geller Rudman & Robbins, LLP and Labaton Sucharow & Rudoff LLP as co-lead counsel be approved. I also

---

[9]Robbins Umeda recently served as co-lead counsel in another derivative action in this court, In re NBTY, Inc. Derivative Litigation, CV 04-2876 (E.D.N.Y. 2004) (Wexler, J.).

27

recommend that Law Offices of Thomas Amon and the firm of Robbins Umeda & Fink, LLP be appointed co-lead counsel in the derivative action.

<u>OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report.  Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), and 72(b); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 506 U.S. 1038 (1992); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED.

Dated: Central Islip, New York
        January 9, 2006

<u>/s/ E. Thomas Boyle</u>
E. THOMAS BOYLE
United States Magistrate Judge

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| C. KENNETH COULTER, On Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No.: 07 Civ. 11624 (RWS) |
| Plaintiff, | : : : | |
| v. | : : : | |
| MORGAN STANLEY, MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY, THE INVESTMENT COMMITTEE, THE PLAN ADMINISTRATOR, THE MORGAN STANLEY GLOBAL DIRECTOR OF HUMAN RESOURCES, JOHN J. MACK, ROY J. BOSTOCK, ERSKINE B. BOWLES, SIR HOWARD J. DAVIES, KAREN JAMESLEY, C. ROBERT KIDDER, DONALD T. NICOLAISEN, CHARLES H. NOSKI, HUTHAM S. OLAYAN, CHARLES E. PHILLIPS, JR., O. GRIFFITH SEXTON, DR. LAURA D. TYSON, DR. KLAUS ZUMWINKEL, and JOHN DOES 1-30, | : : : : : : : : : : : : : : : : : : | (Caption Continued) |
| Defendants. | : : | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
C. KENNETH COULTER'S MOTION FOR CONSOLIDATION,
APPOINTMENT AS INTERIM LEAD PLAINTIFF AND INTERIM
<u>CO-LEAD COUNSEL</u>

| | |
|---|---|
| CAROLYN EGAN, On Behalf of Herself and All Others Similarly Situated, | Civil Action No.: 07 Civ. 11285 (RWS) |
| Plaintiff, | |
| v. | |
| MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY, MORGAN STANLEY, THE INVESTMENT COMMITTEE OF THE MORGAN STANLEY 401(k) PLAN (f/k/a THE MORGAN STANLEY DPSP/START PLAN), THE MORGAN STANLEY GLOBAL DIRECTOR OF HUMAN RESOURCES, WALID A. CHAMMAH, CHARLES CHASIN, ZOE CRUZ, RICHARD PORTOGALLO, JAMES P. GORMAN, NEAL A. SHEAR, CORDELL G. SPENCER, and JOHN DOE DEFENDANTS 1-30, | |
| Defendants. | |
| JOHN SIEFKEN, On Behalf of Himself and All Others Similarly Situated, | Civil Action No.: 07 Civ. 11456 (JGK) |
| Plaintiff, | |
| v. | |
| MORGAN STANLEY, MORGAN STANLEY & CO. INC., MORGAN STANLEY PLANS "INVESTMENT COMMITTEE," MORGAN STANLEY PLANS "ADMINISTRATIVE COMMITTEE," JOHN J. MACK, C. ROBERT KIDDER, ERSKINE B. BOWLES, DONALD T. NICOLAISEN, and JOHN DOES 1-10, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................5

    I.      CONSOLIDATION OF THE ERISA ACTIONS IS PROPER UNDER
           THE FEDERAL RULES OF CIVIL PROCEDURE ................................................5

    II.     ORDERLY PROCEDURES FOR CAPTIONING AND FILING
           DOCUMENTS ........................................................................................................6

    III.    THE PROPOSED LEADERSHIP STRUCTURE .................................................6

           A.     Proposed Interim Lead Plaintiff ................................................................6

           B.     Proposed Counsel Structure .......................................................................7

    IV.    THE CO-LEADERSHIP COUNSEL STRUCTURE PROPOSED BY
           PLAINTIFF COULTER SATISFIES THE REQUIREMENTS OF RULE
           23(G)(1)(C)(1) AND IS IN THE BEST INTERESTS IF THE PLANS'
           PARTICIPANTS AND BENEFICIARIES. ........................................................8

           A.     Counsel for the Plaintiff have Demonstrated a Commitment to
                  Identifying and Investigating Potential Claims in This Action .................8

           B.     Counsel For Plaintiff Have Experience In Class Actions, Other
                  Complex Litigation, and the Types of Claims Asserted In This Case,
                  And Have Knowledge Of The Law Applicable In This Case ....................9

                  1.     Milberg Weiss LLP ......................................................................10

                  2.     Harwood Feffer LLP ....................................................................14

           C.     Milberg Weiss and Harwood Feffer Have The Necessary Resources
                  To Represent the Class ..............................................................................17

CONCLUSION ....................................................................................................................18

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*In re Air Cargo Shipping Services Antitrust Litigation,*
  240 F.R.D. 56 (E.D.N.Y. 2006) ...................................................................................7

## DOCKETED CASES

*In re AIG ERISA Litigation,*
  No. 04-CV-9387-JES (S.D.N.Y. filed Nov. 30, 2004) ...........................................15

*In re Aetna Inc. Securities Litigation,*
  No. 01-CV-9796 (THK) (S.D.N.Y. filed Nov. 6, 2001) .........................................13

*In re Bank One Shareholders Class Action,*
  No. 00-CV-00880 (N.D. Ill. filed Feb. 11, 2000) ..................................................16

*In re Biovail Corp. Securities Litigation,*
  No. 03-CV-8917 (S.D.N.Y. filed Nov. 12, 2003) ...................................................12

*In re Boston Scientific Corp. ERISA Litigation,*
  No. 06-CV-10105-JLT (D. Mass. filed Jan. 19, 2006) .......................................4, 14

*Brieger v. Tellabs Inc.,*
  No. 06-CV-1882 (N.D. Ill. filed Apr. 5, 2006) ......................................................15

*Bright v. Conagra Foods, Inc.,*
  No. 05-CV-00348 (D. Neb. Filed July 18, 2005) ...................................................15

*Brown v. Janus Capital Group, Inc.,*
  No. 03-CV-2061 (D. Colo. filed Oct. 16, 2003) .....................................................15

*Calderon v. Amvescap, PLC,*
  No. 03-CV 2604 (D. Colo. filed Dec. 24, 2003) .....................................................15

*In re Citigroup Pension Plan ERISA Litigation,*
  No. 05 Civ. 5296 (SAS) (S.D.N.Y. filed June 3, 2005) .........................................10

*Corbett v. Marsh & McLennan Co.,*
  No. 03-CV-8893-LAK (S.D.N.Y. filed Nov. 10, 2003) .........................................15

*In re Dell, Inc. ERISA Litigation,*
  No. 06-CV-00758 (W.D. Tex. Filed Sept. 25, 2006) ..............................................14

*In re Deutsche Telekom AG Securities Litigation,*
  No. 00-CV-9475 (NRB) (S.D.N.Y. filed Dec. 13, 2000) .......................................13

*Eastman v. Merrill Lynch & Co., Inc.,*
    No. 08-CV-00058 (S.D.N.Y. filed Jan. 4, 2008) ....................................................................14

*In re Edison Schools, Inc., Securities Litigation*
    No. 02-CV-3692 (JES) (S.D.N.Y. filed May 15, 2002) ........................................................13

*In re Electro-Catheter Corp. Securities Litigation,*
    No. 87-41 (D.N.J. Sept. 7, 1989) ...........................................................................................14

*In re Fremont General Corp. Litigation,*
    No. 07-CV-02693 (C.D. Cal. Filed Apr. 24, 2007) ...............................................................14

*Flynn v. Strong Capital Management, Inc.,*
    No. 03-CV-1067-CNC (E.D. Wis. filed Oct. 31, 2003) .........................................................15

*In re General Electric Corp. ERISA Litigation,*
    No. 06-CV-315 (N.D.N.Y. filed Mar. 16, 2006) ...................................................................14

*Shanehchian v. Macy's Inc.,*
    No. 07-CV-00828 (S.D Ohio filed Oct. 3, 2007)..............................................................4, 14

*Graden v. Conexant System, Inc.,*
    No. 05-CV-695-SRC-MAS (D.N.J. filed Feb. 1, 2005) .........................................................15

*Hillert v. First American Corp.,*
    No. CV07-7602 JVS (C.D. Cal. Filed Nov. 20, 2007) ......................................................4, 14

*Green v. CMS Energy Corp.,*
    No. 02-CV-72004 (E.D. Mich. filed May 17, 2002) .............................................................12

*In re ImClone Systems, Inc., Derivative Litigation,*
    No. 02 Civ. 0163 (RO) (S.D.N.Y. filed Jan. 9, 2002) ..........................................................13

*In re Initial Public Offering Securities Litigation,*
    No. 21-mc-92 (S.D.N.Y. filed Aug. 9, 2001) ........................................................................13

*Kaufman v. New Century Financial Corp.,*
    No. 07-CV-00590 (C.D. Cal. filed May 23, 2007) ................................................................12

*Kratz v. Beazer Homes USA Inc.,*
    No. 07-CV-00725 (N.D. Ga. filed Mar. 29, 2007) ................................................................11

*In re Laidlaw Stockholders Litigation,*
    No. 00-CV-00855-JFA (D.S.C. filed March 17, 2000) .........................................................16

*McKoy v. Bank of America Corp.,*
    No. 03-CV-8025-GBD (S.D.N.Y. filed Oct. 9, 2003) ...........................................................15

*In re Martha Stewart Living Omnimedia Inc., Securities Litigation,*
    No. 02-CV-6273 (JES) (S.D.N.Y. filed Aug. 6, 2002) .............................................................13

*Morse v. McWhorter,*
    No. 97-CV-00370 (M.D. Tenn. filed Apr. 8, 1997) ...................................................................15

*New Jersey Carpenters' Pension Fund v. Mozilo,*
    No. BC 378319 (Cal. Super. Ct. Los Angeles County 2007) .....................................................12

*In re Nortel Networks Corp. Securities Litigation,*
    No. 01-CV-1855 (S.D.N.Y. filed March 2, 2001) .............................................................12, 13

*In re Oxford Health Plans, Inc. Securities Litigation,*
    No. 21-mc-0076-CLB-GAY (S.D.N.Y. filed May 5, 1998) ......................................................16

*Peterson v. AT&T Corp.,*
    No. 99-CV-4982-JLL-RJH (D.N.J. filed Oct. 22, 1999) .........................................................15

*Rothstein v. JWP Inc.,*
    No. 92-CV-05815-WCC (S.D.N.Y. filed Aug. 4, 1992) ..........................................................16

*In re Royal Ahold N.V. Securities & ERISA Litigation,*
    No. 03-md-01539-CCB (D. Md. filed June 19, 2003) .............................................................14

*In re Royal Dutch/Shell Transport ERISA Litigation,*
    No. 04-CV-1398-JWB-SDW (D.N.J. filed Mar. 25, 2004) ............................................4, 6, 15

*In re Safety-Kleen Corp. Stockholders Litigation,*
    No. 00-CV-00736-JFA (D.S.C. filed Mar. 7, 2000) ...............................................................16

*Salvato v. Zale Corp.,*
    No. 06-CV-1124-D (N.D. Tex. filed June 26, 2006) ...............................................................15

*In re Sears, Roebuck & Co. Securities Litigation,*
    No. 02-CV-7527 (N.D. Ill. filed Oct. 18, 2002) .....................................................................12

*Simon v. KPMG LLP,*
    No. 05-CV-03189 (D.N.J. filed June 24, 2005) ......................................................................12

*Stansbery. v AXA Financial Inc.,*
    No. 03-CV-8282-PKC-MHD (S.D.N.Y. filed Oct. 20, 2003) ..................................................15

*Stevens v. Citigroup, Inc.,*
    No. 07-CV-11156 (S.D.N.Y. filed Dec. 11, 2007) ..................................................................14

*In re Tyco Securities Litigation,*
    No. 02-md-01335 (D.N.H. filed Aug. 23, 2002) ....................................................................13

*In re UnumProvident Corp. Securities Litigation,*
    No. 99-CV-00301-SJM (D. Me. filed Sept. 30, 1999) ...........................................................16

*In re UnumProvident Corp. Securities Litigation,*
    MDL No. 03-md-1552 (E.D. Tenn. filed Sept. 3, 2003) .......................................................15

*In re Vodafone Group PLC Securities Litigation,*
    No. 02-CV-7592 (AKH) (S.D.N.Y. filed Sept. 18, 2002) .....................................................13

*Walker v. Massachusetts Financial Services Co.,*
    No. 03-CV-12629 (D. Mass. filed Dec. 30, 2003)................................................................15

*Zarate v. Bank One Corp.,*
    No. 03-CV-7315 (N.D. Ill. filed Oct. 15, 2003) ..................................................................15

## FEDERAL STATUTES

ERISA § 409, 29 U.S.C. § 1109 ...........................................................................................1

ERISA § 104(b), 29 U.S.C. § 1024(b)....................................................................................9

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).......................................................................1, 7

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ..........................................................................1

Fed. R. Civ. P. 23(g)(1)(A)............................................................................................4, 7, 8

Fed. R. Civ. P. 23(g)(3)........................................................................................................8

Fed. R. Civ. P. 42(a) ...........................................................................................................5

## OTHER AUTHORITIES

*Manual For Complex Litigation* (4th ed. 2004)..................................................................5, 6, 7

## INTRODUCTION

Proposed Lead Plaintiff, C. Kenneth Coulter, respectfully submits this Memorandum of Law in support of his Motion for: (1) consolidation, (2) appointment of Interim Lead Plaintiff and Interim Co-Lead counsel; and (3) entry of [Proposed] Pre-trial Order No. 1 (the "Proposed Order").

Plaintiff Coulter initiated one of the three above-captioned actions filed to date in the United States District Court for the Southern District of New York against Morgan Stanley and Morgan Stanley & Co., Inc. (collectively, "Morgan Stanley" or "the Company") and related fiduciaries on behalf of participants in, and beneficiaries of, the Morgan Stanley 401(k) Plan ("401(k) Plan") and the Morgan Stanley Employee Stock Ownership Plan ("ESOP") (collectively, the "Plans").

Each action seeks relief under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs allege that Defendants breached their fiduciary duties by making and maintaining an investment in Morgan Stanley stock in the Plans when it was no longer prudent to do so. As a result, the Plans' participants lost hundreds of millions of dollars in value from their retirement funds. Plaintiff seeks relief pursuant to Sections 409 and 502(a)(2) and (3) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2) and (3), on behalf of the Plans for losses sustained as a result of the Defendants' breaches of their fiduciary duties.

Plaintiff Coulter respectfully submits that he is best suited to represent the putative class because:

- He is a current participant in both the 401(k) Plan and the ESOP;

- His retirement savings are materially invested in Morgan Stanley stock and therefore, has a significant interest in pursuing this action; and

- He was employed at Morgan Stanley for over a decade, and therefore has devoted a significant portion of his career towards serving as a dedicated employee to Morgan Stanley.

Plaintiff Coulter is committed to litigating this case to recover losses suffered by participants in the Plans and understands his legal duties under ERISA to pursue such losses. Mr. Coulter has lost tens of thousands of dollars from his retirement savings. The fact that Mr. Coulter's retirement savings are invested in Morgan Stanley stock, and he suffered significant monetary damage as a result of Defendants' mismanagement of the Plans' assets, provide strong support that he will serve as a dedicated Lead Plaintiff.

Morgan Stanley was and continues to be extensively invested in Collateralized Debt Obligations ("CDOs"), Structured Investment Vehicles ("SIVs") and Conduits. Risk assessment for SIVs is particularly problematic for investors because they are off-the-balance-sheet entities, meaning that they did not have to be included on Morgan Stanley's books. Investors began to pull back from debt sold by SIVs because of their exposure to subprime mortgage securities, causing Morgan Stanley's conduits to be on the brink of collapse. Nevertheless, throughout the Class Period, Morgan Stanley represented to the participants in the Plans and the investing public that it had minimized the extent to which it was exposed to subprime credit, off-the balance sheet entities, CDOs and other credit-specific problems, and maintained that the Company was thriving. Once Morgan Stanley was forced to start revealing its grossly excessive exposure to these losses, Morgan Stanley stock began to drop precipitously. On November 7, 2007, Morgan Stanley issued a press release announcing significant declines in the fair value of subprime related exposure and recorded a breathtaking $3.7 billion write-down. After Morgan Stanley stock hit a 52-week low on November 21, 2007, the Company announced the termination of its Co-President Zoe Cruz. Since the start of the Class Period, Morgan Stanley has taken write-downs totaling a staggering $9.4 billion related to its mortgage operation.

As a result of the foregoing, Defendants knew or should have known that during the Class Period Morgan Stanley stock was an imprudent investment for the Plans due to the fact that Morgan Stanley was so heavily exposed to losses relating to its subprime mortgage securitizations business.

The plaintiffs in this case are employees or former employees of Morgan Stanley who participated in the Plans. They entrusted their retirement savings to the fiduciaries of the Plans. The fiduciaries of the Plans invested the Plans' assets, and thereby, the employee participants' retirement savings, in Morgan Stanley stock despite the fact that they knew or should have known that the Company stock would drastically decline in value due to Morgan Stanley's exposure to subprime mortgage securities.

Upon information and belief, Morgan Stanley regularly communicated with employees, including the Plans' participants, about the Company's performance, future financial and business prospects, and Morgan Stanley stock. During the Class Period, upon information and belief, the Company fostered a positive attitude toward Morgan Stanley stock as a viable investment for the Plans, and/or allowed the Plans' participants to follow their natural bias toward remaining invested in the stock of their employer, even after divestiture was possible, by not disclosing negative material information concerning investment in Morgan Stanley stock. According to the Complaint, the Plans' participants could not appreciate the true risks presented by investments in Morgan Stanley stock and therefore, could not make informed decisions regarding their investments in the Plans.

To promote judicial economy, the Court may consolidate the ERISA cases and appoint an interim lead plaintiff and class counsel. Plaintiff has claims typical of the class and has no conflicts in his ability to vigorously prosecute this case.

In determining the appointment of class counsel, Fed. R. Civ. P. 23(g)(1)(A) provides that the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Milberg Weiss LLP ("Milberg Weiss") and Harwood Feffer LLP ("Harwood Feffer"), experienced ERISA class action firms, continue to dedicate substantial time and resources to advancing Plaintiff's case. Furthermore, Milberg Weiss and Harwood Feffer have obtained extremely valuable recoveries in other ERISA class action matters and have a close working relationship, as the firms have served as co-lead counsel in other ERISA breach of fiduciary duty class actions, including *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-1398-JWB-SDW (D.N.J. filed Mar. 25, 2004), where the firms achieved a settlement for plan members in excess of $90 million, representing one of the largest recoveries ever under ERISA.

Currently, Milberg Weiss and Harwood Feffer are co-lead counsel in *In re Boston Scientific Corp. ERISA Litig.*, No. 06-CV-10105-JLT (D. Mass. filed Jan. 19, 2006). The two firms also presently serve as co-counsel for the plaintiff in *Shanehchian v. Macy's Inc.*, No. 07-CV-00828 (S.D. Ohio filed Oct. 3, 2007), an action under ERISA pending in the U.S. District Court for the Southern District of Ohio, as well as co-counsel for the plaintiff in *Hillert v. First American, Corp.,* No. CV07-7602 JVS (C.D. Cal. filed Nov. 20, 2007). Both firms also have extensive experience in complex, financial and fiduciary duty cases such as this one. Moreover, Milberg Weiss and Harwood Feffer have litigated numerous securities fraud class actions and other complex cases to successful conclusion. Accordingly, Milberg Weiss and Harwood Feffer respectfully submit that consolidation of the ERISA Actions, appointment of Plaintiff Coulter as

Lead Plaintiff, and appointment of Harwood Feffer and Milberg Weiss as Co-Lead Counsel

would best serve the interests of the proposed class of participants in and beneficiaries of the

Plans, and will help promote judicial economy and efficiency.

## ARGUMENT

Given the substantial similarity of the parties and claims in the above-captioned actions,

Plaintiff follows the guidance of the *Manual for Complex Litigation* (4th ed. 2004) ("*Manual*")

and submits for the Court's approval a proposed form of Proposed Order which:  (1) provides for

the consolidation of the ERISA Actions; (2) establishes efficient procedures for the filing and

docketing of papers; (3) appoints an Interim Lead Plaintiff; (4) proposes a Co-Lead organization

of plaintiff's counsel; and (5) otherwise eliminates wasteful and duplicative litigation.

For the reasons below, Plaintiff respectfully submits that [Proposed] Pre-Trial Order

No. 1 should be entered by the Court.  The proposed order will promote the orderly and efficient

litigation of this action in a manner consistent with the recommendations of the *Manual*.

## I.    CONSOLIDATION OF THE ERISA ACTIONS IS PROPER UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 42 of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).

Consolidation of the ERISA Actions is proper because they assert claims under ERISA

against similar defendants and involve common questions of law and fact.  *Id.*

The fiduciaries of the Plans are required to act in the best interest of the Plans'

participants.  Instead, they disseminated false and misleading information to the Plans'

participants contained in company filings and press releases.  This lawsuit seeks to make good to

the Plans' participants losses resulting from Defendants breaches of fiduciary duties caused by

the losses attributable to the precipitous decline in Morgan Stanley stock.

Consolidating the ERISA Actions will help to avoid unnecessary costs and delay by

preventing duplicative efforts and allowing the court to adjudicate the relevant issues in a single

proceeding. Thus, Plaintiff Coulter requests, for purposes of judicial efficiency and effective

administration that the Court consolidate these and any additional class actions filed in or

transferred to this District asserting claims under ERISA in connection with the above-stated

allegations.

## II.    ORDERLY PROCEDURES FOR CAPTIONING AND FILING DOCUMENTS

The Proposed Order establishes procedures for the captioning, filing and docketing of

papers in these ERISA Actions, and in any cases that may hereafter be filed in or transferred to

this Court. These procedures include the establishment of a uniform caption and master docket

for the filing of documents relating to the consolidated actions. Such procedures, designed to

enhance efficiency, are particularly necessary and appropriate in complex class action litigation

such as this. *See Manual* § 21.12. In addition, this type of order has been used in numerous

other cases in which the ERISA cases have been consolidated.[1]

## III.   THE PROPOSED LEADERSHIP STRUCTURE

### A.    Proposed Interim Lead Plaintiff

Plaintiff Coulter was a participant in the Plans throughout the Class Period. Significant

portions of his retirement savings in the Plans are invested in Morgan Stanley stock as a result of

---

[1]    *See, e.g., In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-CV-1398-JWB-SDW (D.N.J. June 30, 2004), order attached as Exhibit A to the Joint Declaration of Lori G. Feldman and Robert I. Harwood in Support of Plaintiff's Motion For: (1) Consolidation; (2) Appointment of Lead Plaintiffs and Leadership Structure; and (3) Entry of [Proposed] Pretrial Order No. 1 (the "Joint Decl.").

the way the Plans were administered by its fiduciaries.  These investments have been adversely

impacted by the failure of Defendants to exercise their fiduciary duties and protect the Plans.

The Plans have tens of thousands of participants who suffered tremendous losses as a result of

the recent Morgan Stanley stock price collapse.  On an interim basis pending class certification,

Plaintiff Coulter seeks to represent the interests of all of the participants of the Plans who

suffered similar losses as is required in an action on behalf of the Plans under ERISA

§ 502(a)(2), 29 U.S.C. § 1132(a)(2).

**B.    Proposed Counsel Structure**

The Proposed Order implements the procedures suggested by the *Manual* by designating

Interim Co-Lead Counsel for plaintiffs.  *See Manual* §§ 10.22, 40.22.  As stated in the *Manual*,

in determining lead counsel, the court should "conduct an independent review (usually a hearing

is advisable) to ensure that counsel appointed to leading roles are qualified and responsible, that

they will fairly and adequately represent all of the parties on their side, and that their charges will

be reasonable."  *Id*. at § 10.22.  Indeed, the most important factor is "achieving efficiency and

economy without jeopardizing fairness to the parties."  *Id*. at § 10.221.  When appointing interim

lead counsel, it is "generally accepted that the considerations set out in Rule 23(g)(1)(A), which

governs appointment of class counsel once a class is certified, apply equally to the designation of

interim class counsel before certification."  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240

F.R.D. 56, 57 (E.D.N.Y. 2006) (citation omitted).

Fed. R. Civ. P. 23(g)(1)(A) specifies that in appointing class counsel, the court must

consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources counsel will commit to representing the class.

Plaintiff proposes the following counsel structure, which, as described herein, satisfies

the requirements of Fed. R. Civ. P. 23(g)(1)(A):

Co-Lead Counsel
Milberg Weiss LLP
One Pennsylvania Plaza
New York, New York  10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

Harwood Feffer LLP
488 Madison Avenue
New York, New York  10022
Telephone:  (212) 935-7400
Facsimile:  (212) 753-3630

Plaintiff proposes that the proposed Co-Lead Counsel be appointed pursuant to Fed. R.

Civ. P. 23(g)(3), which provides for the designation of interim class counsel to act on behalf of a

putative class before the determination of whether to certify the action as a class action.

## IV.    THE CO-LEADERSHIP COUNSEL STRUCTURE PROPOSED BY PLAINTIFF COULTER SATISFIES THE REQUIREMENTS OF RULE 23(G)(1)(C)(1) AND IS IN THE BEST INTERESTS IF THE PLANS' PARTICIPANTS AND BENEFICIARIES.

### A.    Counsel for the Plaintiff have Demonstrated a Commitment to Identifying and Investigating Potential Claims in This Action

Plaintiff Coulter's proposed Co-Leadership Counsel have taken substantial steps in

identifying and investigating the claims set forth in this action.  The firms' attorneys and staff

(including full time private investigators, forensic accountants and financial analysts) are

extensively investigating Morgan Stanley's alleged wrongdoing, reviewed court actions and

pleadings, as well as media and other reports, which resulted in the filing of the complaint.  In

addition, as is standard practice in ERISA cases, the firms will be requesting plan documents

from Morgan Stanley pursuant to ERISA § 104(b), 29 U.S.C. § 1024(b).  Milberg Weiss and

Harwood Feffer have been working co-operatively to assure that they do not duplicate each

other's work and are committed to making the substantial investment of time and resources

necessary to properly pursue and lead the Morgan Stanley ERISA action.

###### B.    Counsel For Plaintiff Have Experience In Class Actions, Other Complex Litigation, and the Types of Claims Asserted In This Case, And Have Knowledge Of The Law Applicable In This Case

Milberg Weiss and Harwood Feffer, both highly regarded firms with significant

experience in complex class actions, will adequately represent Plaintiff and the proposed Class in

this action.  Both firms have well-known records of successfully pursuing financial, accounting

and securities fraud matters, which are highly relevant to this litigation.[2]  Further, both firms

have substantial experience in litigating ERISA 401(k) actions, and have successfully litigated

numerous other class action claims based on breaches of fiduciary duty.[3]

Milberg Weiss and Harwood Feffer have each taken a leading role among law firms in

pursuing employee lawsuits and ERISA violations on behalf of participants and beneficiaries in

employer-sponsored benefit plans.  The two firms have served or currently serve as lead or co-

lead counsel in many ERISA class actions and have recovered substantial sums in these matters

in addition to bringing about significant structural changes to employee benefit plans.

Notably, as discussed above, Milberg Weiss and Harwood Feffer served as co-lead

counsel for the plaintiffs in *In re Royal Dutch/Shell Transport ERISA Litig.*, an ERISA breach of

fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of

---

[2]    *See* Joint Decl., Exhibits B and C (resumes of Milberg Weiss and Harwood Feffer, respectively).

[3]    Plaintiff Coulter has been advised that Milberg Weiss, a named partner, and two former named partners (who are no longer with the firm) were indicted, the nature of the charges, and the current status of the proceedings.

certain of the company's U.S. employees invested in the company's stock fund. The $90 million

settlement (representing approximately 78% of the class' claimed loss) is one of the largest

amounts obtained in an ERISA breach of fiduciary duty case. Significantly, the settlement

included important provisions that required the corporate defendants to implement structural

changes, including procedures regarding the monitoring and training of individuals appointed to

be ERISA fiduciaries. Moreover, at the settlement fairness hearing in August 2005, Judge

Bissell of the District of New Jersey remarked on the skill and efficiency of class counsel in the

prosecution of the case, commenting that:

> the attorneys in the firms involved in this matter…are highly experienced and
> highly skilled in matters of this kind. Moreover, in this case it showed. Those
> efforts were vigorous, imaginative and prompt in reaching the settlement of this
> matter with a minimal amount of discovery …. So both skill and efficiency were
> brought to the table here by counsel, no doubt about that.

Transcript of Proceeding before Honorable John W. Bissell, *In re Royal Dutch/Shell Transport*

*ERISA Litig.*, No. 04-CV-1398 JWB-SDW (D.N.J. Aug. 22, 2005) *see* Joint Decl., Exhibit D.

Additionally, both Milberg Weiss and Harwood Feffer have their main offices in this

District, and all the respective firms' attorneys prosecuting this action are located in this District,

giving them ready access to the Court. Such a structure will serve the best interests of the Class,

insofar as it will increase efficiency and reduce expenses.

### 1.    Milberg Weiss LLP

Milberg Weiss has taken a leading role in pursuing numerous employee lawsuits and

ERISA violations on behalf of participants and beneficiaries in employer-sponsored benefit

plans.

By way of example, Milberg Weiss has obtained a very significant result in the *In re*

*Citigroup Pension Plan ERISA Litigation*, Master File 05 Civ. 5296 (S.D.N.Y. filed June 3,

2005) (Scheindlin, J.), pending in this District before Judge Scheindlin, where Milberg Weiss

serves as Co-lead counsel for the certified class.  In *Citigroup Pension Plan Litig.*, the plaintiffs

allege that certain amendments to the pension plan at issue that created and revised the plan's

cash balance formula, both violated age-based accrual rules for defined benefits plans as set forth

in ERISA and violate the plan's provision that the rights of all employees to benefits accrual

through the date of a partial termination shall be non-forfeitable.  In December 2006, Judge

Scheindlin granted summary judgment for the plaintiffs finding that Citigroup's pension plan

violated ERISA.  Specifically, the Court found that Citigroup's pension plan violated ERISA's

benefit accrual rules set forth in § 204(b)(1); that Citigroup did not provide adequate notice to

participants pursuant to ERISA § 204(h), which is a precondition to effective plan amendments;

and that the Citigroup pension plan unlawfully discriminated on the basis of age and therefore

violated ERISA's anti-discrimination provision, § 204(b)(1)(h)(i).  Consequently, Judge

Scheindlin ordered the defendants to reform the pension plan to comply with ERISA.[4]

Milberg Weiss also represents participants in defined contribution  retirement plans in

ERISA litigation involving, among others, Boston Scientific Corp. (D. Mass.), where, together

with Harwood Feffer, it is Co-Lead Counsel for the class; First American, Corp. (C.D. Cal.),

where again Milberg Weiss and Harwood Feffer jointly represent Plaintiff Hillert pending their

motion for appointment as Co-Lead Counsel; General Electric (N.D.N.Y.); Macy's, Inc. (S.D.

Ohio); Fremont General, Corp. (C.D. Cal.); Citigroup, Inc. (S.D.N.Y.) (Stein, J.); Citigroup

Pension (pending in this District) (Scheindlin, J.); Merrill Lynch & Co., Inc. (pending in this

District) (Sand, J.); and Dell, Inc. (W.D. Tex.).

Furthermore, Milberg Weiss also has substantial experience litigating cases involving the

mortgage industry.  For example, Milberg Weiss was appointed co-lead counsel in *Kratz v.*

---

[4]      A copy of Judge Scheindlin's decision is appended to the Joint Decl. as Exhibit E.

*Beazer Homes USA Inc.*, No. 07-CV-00725 (N.D. Ga. filed Mar. 29, 2007) this past August. The

firm is also currently involved in litigation against Countrywide, *New Jersey Carpenters'*

*Pension Fund v. Mozilo*, No. BC 378319 (Cal. Super. Ct. Los Angeles County 2007), Fremont

General, *In Re Fremont General Corp.* and New Century Mortgage Corp., *Kaufman v. New*

*Century Financial Corp.*, No. 07-CV-00590, (C.D. Cal. filed May 23, 2007).  The familiarity

with and knowledge of the mortgage industry that Milberg Weiss has obtained through

investigating and litigating these cases will serve as a valuable asset to the efficient and vigorous

litigation of this action.

　　　　In the past two years alone, Milberg Weiss successfully settled and received preliminary

and/or final approval for settlement in many complicated class actions.  For example, on

December 26, 2006, Milberg Weiss settled a case against Nortel Networks Corp. for cash and

stock valued at $1.32 billion.  *In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855

(S.D.N.Y. filed March 2, 2001) (Berman, J.).  On June 16, 2006, Milberg Weiss achieved a

settlement and final approval of settlement with KPMG for $225 million.  *Simon v. KPMG LLP*,

No. 05-CV-03189 (D.N.J. filed June 24, 2005).  On January 10, 2007, Milberg Weiss received

final court approval of a settlement with Sears for $215 million.  *In re Sears, Roebuck and Co.*

*Sec. Litig.*, No. 02-CV-7527 (N.D. Ill. filed Oct. 18, 2002).  In September 2007, Milberg Weiss

settled the CMS Energy securities litigation for $200 million.  *Green v. CMS Energy Corp.*, No.

02-CV-72004 (E.D. Mich. filed May 17, 2002).  Just last month, Milberg Weiss announced a

settlement with Biovail Corporation for $138 million (preliminary approval pending before

Judge Owen).  *In re Biovail Corp. Sec. Litig.*, No. 03-CV-8917 (S.D.N.Y. filed Nov. 12, 2003)

(Owen, J.).

Significantly, on December 19, 2007, Judge Paul Barbadoro of the District of New Hampshire granted final approval of a $3.2 billion settlement of investor claims involving Tyco International, Ltd.  Milberg Weiss is Co-lead counsel for plaintiffs in the *Tyco* litigation and worked to achieve the largest cash payment ever made by a corporate defendant in the history of U.S. securities litigation, and the second-largest auditor settlement in securities class action history.  *In re Tyco Sec. Litig.*, No. 02-md-01335 (D.N.H. filed Aug. 23, 2002).

Moreover, Milberg Weiss has achieved tremendous results litigating cases in this District. The number and names of cases that Milberg Weiss has successfully litigated in this District are too long to list here, but some recent examples of successful cases are:  *In re Initial Public Offering Securities Litigation*, No. 01-mc-92 (S.D.N.Y. filed Aug. 9, 2001) (Scheindlin, J.); *In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855 (filed March 2, 2001) (Berman, J.); *In re Martha Stewart Living Omnimedia Inc., Sec. Litig.*, No. 02-CV-6273 (S.D.N.Y. filed Aug. 6, 2002) (Sprizzo, J.); *In re Edison Schools, Inc., Sec. Litig.*, No. 02-CV-3692 (S.D.N.Y. filed May 15, 2002) (Sprizzo, J.); *In re Vodafone Group PLC Sec. Litig.*, No. 02-CV-7592 (S.D.N.Y. filed Sept. 18, 2002) (Hellerstein, J.); *In re Aetna Inc. Sec. Litig.*, No. 01-CV-9796 (S.D.N.Y. filed Nov. 6, 2001) (Katz, J.); *In re ImClone Systems, Inc., Deriv. Litig.*, No. 02 Civ. 0163 (S.D.N.Y. filed Jan. 9, 2002) (Owen, J.); and *In re Deutsche Telekom AG Sec. Litig.,* No. 00-CV-9475 (S.D.N.Y. filed Dec. 13, 2000) (Buchwald, J.).

The Milberg Weiss attorneys involved in this action are led by Lori G. Feldman, a partner at Milberg Weiss, who handles many ERISA class actions along with numerous complex securities and consumer fraud class actions.  Ms. Feldman graduated from Albany Law School in 1990, where she served as an Executive Editor of the *Albany Law Review.*  She has interned at the Civil Division of the United States Attorney's Office in Brooklyn, New York.  Ms. Feldman

is admitted to the Bars of the States of Washington and New York and federal district and appellate courts throughout the country.  From 2000 through mid-2005, she served as Managing Partner of Milberg Weiss's Seattle Office.  In 2002-03 and 2004-05, Ms. Feldman was named a "Rising Star of Washington Law" by her fellow practitioners in Seattle.  Rising Stars are considered to be Washington's top lawyers under the age of 40.  In addition to lecturing on class action practice, Ms. Feldman has served as Co-Chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington.  Ms. Feldman has been invited to speak on subprime mortgage issues at upcoming continuing legal education seminars that will take place this coming March and May.

Ms. Feldman's representative recoveries exceed hundreds of millions of dollars.  Besides representing the plaintiff in the instant litigation, Ms. Feldman currently represents participants of defined contribution retirement plans in ERISA litigation involving, among others, *In re General Electric Corp. ERISA Litigation*, No. 06-CV-315 (N.D.N.Y. filed Mar. 16, 2006), *In re Fremont General Corp. Litigation*, No. 07-CV-02693 (C.D. Cal. filed Apr. 24, 2007), *In re Dell Inc. ERISA Litigation*, No. 06-CV-00758 (W.D. Tex. filed Sept. 25, 2006), *Shanehchian v. Macy's Inc.*, No. 07-CV-00828 (S.D. Ohio filed Oct. 3, 2007), *Hillert v. First American Corp.*, No. No. CV07-7602 JVS (C.D. Cal filed Nov. 20, 2007), *Stevens v. Citigroup, Inc.*, No. 07-CV-11156 (S.D.N.Y. filed Dec. 11, 2007) (Stein, J.), *Eastman v. Merrill Lynch & Co., Inc.*, No. 08-CV-00058 (S.D.N.Y. filed Jan. 4, 2008) (Sand, J.), and *In Re Boston Scientific Corp.*, No. 06-CV-10105 (D. Mass. filed Jan. 19, 2006).  Ms. Feldman also maintains an extensive securities fraud class action practice.

### 2.    Harwood Feffer LLP

Like Milberg Weiss, Harwood Feffer has also been designated as lead, co-lead or special counsel in numerous complex federal securities matters, shareholder derivative actions, and

various transactional and consumer matters.  Courts have often recognized Harwood Feffer's

skill in class actions.  For example, in *In re Electro-Catheter Securities Litigation*, Judge

Nicholas Politan of the District of New Jersey stated:

> [C]ounsel in this case are highly competent, very skilled in this very specialized
> area and were at all times during the course of the litigation that I participated in,
> which was perhaps the major part of the Court litigation here, always well
> prepared, well spoken, and knew their stuff and they are a credit to their
> profession.  They are the top of the line.

*In re Electro-Catheter Corp. Sec. Litig.*, No. 87-41 (D.N.J. Sept. 7, 1989).

Harwood Feffer has served or currently serves as lead or co-lead counsel in dozens of

ERISA class actions, including:  *In re Royal Ahold N.V. Securities & ERISA Litigation*, No. 03-

md-01539-CCB (D. Md. filed June 19, 2003); *Peterson v. AT&T Corp.*, No. 99-CV-4982-JLL-

RJH (D.N.J. filed Oct. 22, 1999); *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-

CV-1398-JWB-SDW (D.N.J. filed Mar. 25, 2004); *In re UnumProvident Corp. Securities*

*Litigation*, MDL No. 03-md-1552 (E.D. Tenn. filed Sept. 3, 2003); *Bright v. Conagra Foods,*

*Inc.*, No. 05-CV-00348 LES-TDT (D. Neb. filed July 18, 2005); *In re AIG ERISA Litig.*, No. 04-

CV-9387 (S.D.N.Y. filed Nov. 30, 2004) (Sprizzo, J.); *Graden v. Conexant Systems, Inc.* No. 05-

CV-695-SRC-MAS (D.N.J. filed Feb. 1, 2005); *Stansbery. v AXA Financial Inc.*, No. 03-CV-

8282 (S.D.N.Y. filed Oct. 20, 2003) (Castel, J.); *McKoy v. Bank of America Corp.*, No. 03-CV-

8025 (S.D.N.Y. filed Oct. 9, 2003) (Daniels, J.); *Zarate v. Bank One Corp.*, No. 03-CV-7315

(N.D. Ill. filed Oct. 15, 2003); *Brown v. Janus Capital Group, Inc.,* No. 03-CV-2061 (D. Colo.

filed Oct. 16, 2003); *Brieger v. Tellabs Inc.*, No. 06-CV-1882 (N.D. Ill. filed Apr. 5, 2006);

*Salvato v. Zale Corp.*, No. 06-CV-1124-D (N.D. Tex. filed June 26, 2006); *Corbett v. Marsh &*

*McLennan Co.,* No. 03-CV-8893 (S.D.N.Y. filed Nov. 10, 2003) (Kaplan, J.); *Flynn v. Strong*

*Capital Mgmt., Inc.*, No. 03-CV-1067-CNC (E.D. Wis. filed Oct. 31, 2003); *Walker v. Mass.*

*Fin. Serv.*, No. 03-CV-12629 (D. Mass. filed Dec. 30, 2003); and *Calderon v. Amvescap, PLC*,

No. 03-CV 2604 (D. Colo. filed Dec. 24, 2003).

Robert I. Harwood, senior partner of Harwood Feffer, graduated from William and Mary

Law School in 1971, and has specialized in class action litigation since beginning his career in

1972 at the Enforcement Division of the New York Stock Exchange.  He has prosecuted

numerous securities, class, derivative, and ERISA actions.  He is a member of the Trial Lawyers'

Section of the New York State Bar Association and has served as a guest lecturer at trial

advocacy programs sponsored by the Practicing Law Institute.

Mr. Harwood recently served as lead counsel in *Morse v. McWhorter*, No. 97-CV-00370

(M.D. Tenn. filed Apr. 8, 1997), in which a settlement fund of $49.5 million was created for the

benefit of the Class, as well as *In re Bank One Shareholders Class Actions*, No. 00-CV-00880

(N.D. Ill. filed Feb. 11, 2000), which resulted in the creation of a $45 million settlement fund.

Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litig.,* No.

00-CV-00736-JFA (D.S.C. filed Mar. 7, 2000), which resulted in a settlement fund of $44.5

million; *In re Laidlaw Stockholders Litig.,* No. 00-CV-00855-JFA (D.S.C. filed March 17, 2000),

which resulted in a settlement fund of $24 million; *Rothstein v. JWP Inc.*, No. 92-CV-05815

(S.D.N.Y. filed Aug. 4, 1992) (Conner, J.), which resulted in a $37 million settlement fund; *In re*

*Oxford Health Plans, Inc. Securities Litigation,* No. 21-mc-0076 (S.D.N.Y. filed May 5, 1998)

(Brieant, J.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics;

and *In re UnumProvident Corp. Sec. Litig.*, No. 99-CV-00301-SJM (D. Me. filed Sept. 30,

1999), which resulted in the creation of a settlement fund of $45 million.

C.    **Milberg Weiss and Harwood Feffer Have The**
      **Necessary Resources To Represent the Class**

Both Milberg Weiss and Harwood Feffer are highly successful and established law firms

and  have the financial resources and personnel necessary to vigorously pursue this action.

Moreover, Plaintiff Coulter's proposed co-leadership structure possesses experience handling

large-scale, complex class-action litigation, and is thus able to budget the appropriate resources

to prosecute this action without duplicating or wasting resources.

## CONCLUSION

For the foregoing reasons, Plaintiff Coulter respectfully requests that the Court enter

Proposed Order:  (1) consolidating the ERISA Actions; (2) appointing him as Interim Lead

Plaintiff; and (3) appointing Harwood Feffer and Milberg Weiss as Interim Co-Lead Counsel to

act on behalf of ERISA class plaintiffs.

DATED: January 9, 2008                    Respectfully Submitted,

                                          **MILBERG WEISS LLP**


                                          By:     /s/ Lori G. Feldman
                                                  Lori G. Feldman

                                          Lori G. Feldman (LF 3478)
                                          lfeldman@milbergweiss.com
                                          Arvind Khurana (AK 3643)
                                          akhurana@milbergweiss.com
                                          One Pennsylvania Plaza
                                          New York, NY  10119
                                          Tel: (212) 594-5300
                                          Fax: (212) 868-1229

                                          **HARWOOD FEFFER LLP**


                                          By:     /s/ Robert I. Harwood
                                                  Robert I. Harwood

                                          Robert I. Harwood (RH 3287)
                                          rharwood@hfesq.com
                                          Samuel Rosen (SR 3287)
                                          srosen@hfesq.com
                                          488 Madison Avenue
                                          New York, New York 10022
                                          Telephone: (212) 935-7400
                                          Facsimile:  (212) 753-3630

                                          *Counsel for Plaintiff C. Kenneth Coulter and*
                                          *Proposed Co-Lead Counsel for the Class*

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROLYN EGAN, on behalf of herself and all others similarly situated,<br><br>                          Plaintiff,<br><br>                    -against-<br><br>MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY, THE INVESTMENT COMMITTEE OF THE MORGAN STANLEY 401(k) PLAN (f/k/a THE MORGAN STANLEY DPSP/START PLAN), THE MORGAN STANLEY GLOBAL DIRECTOR OF HUMAN RESOURCES, WALID A. CHAMMAH, CHARLES CHASIN, ZOE CRUZ, RICHARD PORTOGALLO, JAMES P. GORMAN, NEAL A. SHEAR, CORDELL G. SPENCER, and JOHN DOE DEFENDANTS 1-30,<br><br>                          Defendants. | Civ.:  07 Civ. 11285 (RWS) |

*(Captions Continued)*


**MEMORANDUM OF LAW (1) IN OPPOSITION TO THE MOTION OF C. KENNETH COULTER FOR APPOINTMENT AS INTERIM LEAD PLAINTIFF AND MILBERG WEISS LLP AND HARWOOD FEFFER LLP AS INTERIM CO-LEAD COUNSEL; AND (2) IN SUPPORT OF THE MOTION OF PLAINTIFF CAROLYN EGAN AND JOHN SIEFKEN FOR CONSOLIDATION OF THE ACTIONS AND APPOINTMENT OF WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP AND SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP AS INTERIM CLASS COUNSEL**

| | |
|---|---|
| JOHN SIEFKEN, On Behalf of Himself and All Others Similarly Situated, | Civil Action No.:  07 Civ. 11456 (JGK) |
| Plaintiff, | |
| -against- | |
| MORGAN STANLEY, MORGAN STANLEY & CO. INC., MORGAN STANLEY PLANS "INVESTMENT COMMITTEE," MORGAN STANLEY PLANS "ADMINISTRATIVE COMMITTEE," JOHN J. MACK, C. ROBERT KIDDER, ERSKINE B. BOWLES, DONALD T. NICOLAISEN, and JOHN DOES 1-10, | |
| Defendants. | |
| C. KENNETH COULTER, on behalf of himself and all others similarly situated, | Civ.:  07 Civ. 11624 (RWS) |
| Plaintiff, | |
| -against- | |
| MORGAN STANLEY, MORGAN STANLEY & CO. INCORPORATED, MORGAN STANLEY, THE INVESTMENT COMMITTEE, THE PLAN ADMINISTRATOR, THE MORGAN STANLEY GLOBAL DIRECOR OF HUMAN RESOURCES, JOHN J. MACK, ROY J. BOSTOCK, ERSKINE b. BOWLES, KIR HOWARD J. DAVIES, KAREN JAMESLEY, C. ROBERT KIDDER, DONALD T. NICHOLAISEN, CHARLES h. NOSKI, HUTHAM s. OLAYAN, CHARLES E. PHILLIPS, JR., O. GRIFFITH SEXTON, DR. LAURA D. TYSON, DR. KLAUS ZUMWINKEL and JOHN DOE 1-30, | |
| Defendants. | |

*(Captions Continued)*

498798.14

GREGORY MAJOR, On Behalf of Himself and
All Others Similarly Situated,

                        Plaintiff,

              -against-

MORGAN STANLEY, MORGAN STANLEY
& CO. INCORPORATED, THE INVESTMENT
COMMITTEE OF THE MORGAN STANLEY
401(k) PLAN, THE PLAN ADMINISTRATOR,
THE MORGAN STANLEY GLOBAL
DIRECTOR OF HUMAN RESOURCES, JOHN J.
MACK, ROY J. BOSTOCK, ERSKINE b.
BOWLES, SIR HOWARD j. DAVIES, KAREN
JAMESLEY, C. ROBERT KIDDER, DONALD
T. NICOLAISEN, CHARLES H. NOSKI,
HUTHAM S. OLAYAN, CHARLES E.
PHILLIPS, JR., O GRIFFITH SEXTON,
DR. LAURA D. TYSON, DR. KLAUS
ZUMWINKEL, and JOHN DOES 1-30,

                     Defendants.

Civil Action No.:  08 Civ. 00496

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................... 1

    A.   The Filing of the Actions ........................................................................... 1

    B.   The Nature of the Actions .......................................................................... 2

    C.   The Motion Brought by Milberg Weiss ..................................................... 3

II.  ARGUMENT ........................................................................................................ 3

    A.   An Interim "Lead Plaintiff" Is Neither
        Warranted Nor Necessary In This ERISA Case ....................................... 3

    B.   Wolf/Schiffrin Should Be Appointed Interim Class Counsel .................... 5

    C.   Consolidation Of The Actions Is Proper
        Under The Federal Rules Of Civil Procedure .......................................... 13

III. CONCLUSION .................................................................................................... 15

498798.14

Plaintiffs Carolyn Egan and John Siefken (the "Plaintiffs") respectfully submit this memorandum of law (1) in opposition to the motion of C. Kenneth Coulter for the entry of an order appointing plaintiff Coulter as interim lead plaintiff and appointment of the law firms of Milberg Weiss LLP and Harwood Feffer LLP ("Milberg/Harwood") as interim co-lead counsel; and (2) in support of their motion for the entry of an order consolidating the above-captioned actions and any substantially similar future filed actions under Fed. R. Civ. P 42(a) and appointing Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway") (together "Wolf/Schiffrin") as interim class counsel.

The Plaintiffs respectfully submit herewith a [Proposed] Pre-trial Order No. 1 (the "Plaintiffs' Proposed Order") reflecting the relief requested herein.

## I. <u>INTRODUCTION</u>

### A.    <u>The Filing of the Actions</u>

On December 14, 2007, plaintiff Egan, by and through her counsel Wolf Haldenstein, filed the first of the three above-captioned related actions in the United States District Court for the Southern District of New York. (A copy of plaintiff Egan's complaint is annexed as Exhibit A to the Joint Declaration of Mark C. Rifkin and Edward W. Ciolko ("Rifkin-Ciolko Decl."), submitted herewith.)

On December 19, 2007, after the filing of the Egan complaint, Milberg Weiss published a press release in which it announced that it was investigating possible illegal conduct relating to" the Plans and advised those who wished to discuss the investigation to contact Milberg Weiss by telephone, e-mail or through the firm's website. (A copy of the Milberg Weiss press release is annexed as Exhibit B to the Rifkin-Ciolko Decl.)

On December 20, 2007, plaintiff John Siefken, by and through his counsel Schiffrin

Barroway, filed the second of the three above-captioned actions.  (A copy of plaintiff Siefken's

complaint is annexed as Exhibit C to the Rifkin-Ciolko Decl.)

On December 28, 2007, two weeks after the Egan complaint and nine days after the

publication of Milberg Weiss's press release, plaintiff Coulter, by and through his counsel

Milberg Weiss, filed the third of the above-captioned actions.  (A copy of plaintiff Coulter's

complaint is annexed as Exhibit D to the Rifkin-Ciolko Decl.)

On January 18, 2008, plaintiff Gregory Major, by and through his counsel Abraham,

Fruchter & Twersky, LLP, filed the fourth of the above captioned actions.  (A copy of plaintiff

Major's complaint is annexed as Exhibit E to the Rifkin-Ciolko Decl.)

### B.    The Nature of the Actions

The actions assert claims under the Employee Retirement Income Security Act of 1974

("ERISA") against Morgan Stanley, Morgan Stanley & Co., Inc. and other alleged fiduciaries of

the Morgan Stanley 401(k) Plan and the Morgan Stanley Employee Stock Ownership Plan

("ESOP") (collectively, the "Plans"), on behalf of the Plans themselves and a class of

participants and/or beneficiaries in the Plans from December 1, 2005 to present (the "Class

Period"), for relief to the Plans pursuant to Sections  409 and 502(a) of ERISA, 29 U.S.C.

§§ 1109 and 1132(a).  The actions primarily allege that during the Class Period, the defendants

breached their fiduciary duties under ERISA by (1) investing and permitting the investment of

Morgan Stanley stock in the Plans when it was no longer prudent to do so because, inter alia,

Morgan Stanley had become heavily exposed to extraordinary risks relating to its subprime

498798.14

mortgage securitizations business; and (2) by failing to disclose negative material information concerning investment in Morgan Stanley stock.[1]

### C.     The Motion Brought by Milberg Weiss

On or about January 9, 2007, Milberg Weiss moved to consolidate the currently filed actions, to have its client named "interim lead plaintiff," and to have itself as well as Harwood Feffer LLP (which did not even appear on Milberg Weiss's pleading) appointed as interim co-lead counsel.

As discussed below, the Plaintiffs are in accord that the above-captioned actions and any other subsequently filed related ERISA actions should be consolidated in this Court.  However, the Plaintiffs strongly oppose the appointment of a "lead plaintiff" in this ERISA action and the appointment of Milberg/Harwood as co-lead counsel.  No lead plaintiff need be appointed and Wolf/Schiffrin, who are counsel for the Plaintiffs in the first two filed cases and who have stellar records in ERISA and class action litigation, should be appointed as interim class counsel.

## II.  ARGUMENT

### A.     An Interim "Lead Plaintiff" Is Neither Warranted Nor Necessary In This ERISA Case

The Milberg/Harwood motion seeks to have plaintiff Coulter appointed as lead plaintiff in this action "on an interim basis pending class certification . . . as is required in an action on behalf of the Plans under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)."  (See memorandum of law submitted by Milberg/Harwood at pp. 6-7.)  Milberg/Harwood's view of what is "*required*"

---

[1]  On or before December 20, 2007, service of process was effectuated on defendants and filed with the Court.  (See Rifkin-Ciolko Decl., Ex. F.)  On January 7, 2008, Wolf Haldenstein negotiated an agreement with the law firm of Davis Polk & Wardell, which appeared as counsel for defendants in this action, for an extension of time until February 8, 2008 for defendants to answer or otherwise respond to the Egan complaint.  (See Rifkin-Ciolko Decl., Ex. G.)  Schiffrin Barroway has negotiated a similar extension of time with Davis Polk in the Siefken action.

3

under the law does not bode well for its attempt to represent the Class. There is *no requirement* in the ERISA statute for the appointment of a lead plaintiff in an ERISA case, and Milberg/Harwood have not even attempted to demonstrate why such a designation would be advantageous or necessary in this particular ERISA case.

Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." ERISA § 509(a), 29 U.S.C. § 1109(a), in turn, imposes personal liability on breaching fiduciaries:

> to make good to *such plan* any losses to the plan resulting from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. (emphasis added.)

Therefore, relief sought under ERISA § 502(a)(2) inures solely to the benefit of the Plans, not to the benefit of individual participants of the Plans. See, e.g., In re Doral Fin. Corp. Sec. Litig., No. 05 MDL 1706 RO, 2006 WL 1120491, at *1 (S.D.N.Y. Apr. 27, 2006) (noting that there is "[n]o statutory authority exists for the appointment of lead plaintiff in shareholder derivative actions."); DiRienzo v. Philip Servs. Corp., 232 F.3d 49, 61-62 (2d Cir. 2000) (distinguishing between "lead plaintiffs" in class actions under the PSLRA and "plaintiffs in derivative actions").

To the extent that the Court believes that appointment of a "lead plaintiff would for some reason be appropriate in this case, plaintiffs Egan and Siefken are well suited to act in that capacity and represent the putative Class prior to certification. They are current participants in the 401(k) Plan and the ESOP and were participants throughout the alleged Class Period. They both lost a significant amount of their retirement savings as a result of their investment in

4

Morgan Stanley and are committed to litigating this case to recover losses suffered by the Plans.

Milberg Weiss has offered no reason why plaintiff Coulter possesses any particular attribute that

would put him a better position than plaintiffs Egan and Siefken to serve as a lead plaintiff.

### B.     Wolf/Schiffrin Should Be Appointed Interim Class Counsel

Rule 23(g)(2)(A) authorizes the Court to "designate . . . class counsel  to act on behalf of

the putative class before determining whether to certify the action as a class action."  As the

Committee Notes to the 2003 amendments to Rule 23 state, designation of interim class counsel

prior to certification is appropriate because:

> [I]t will usually be important for an attorney to take action to
> prepare for the certification decision.  The amendment to Rule
> 23(c)(1) recognizes that some discovery is often necessary for that
> determination.  It may also be important to make or respond to
> motions before certification . . . . Rule 23(g)(2)(A) authorizes the
> court to designate interim counsel to act on behalf of the putative
> class before the class certification decision is made.

Rule 23(g)(1)(C)(i) directs the court to appoint class counsel who will "fairly and

adequately represent the interests of the class."[2]  In appointing class counsel, the Rule directs the

Court to consider "any other matter pertinent to counsel's ability to fairly and adequately

represent the interests of the class," including the following factors described in Rule 23(g):

1.     the work counsel has done in identifying or investigating potential claims
   in the action,

2.     counsel's experience in handling class actions, other complex litigation,
   and claims of the type asserted in the action,

3.     counsel's knowledge of the applicable law, and

---

[2]  When appointing interim lead counsel, it is "generally accepted that the considerations set out in Rule
23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the
designation of interim class counsel before certification."  In re Air Cargo Shipping Servs. Antitrust
Litig., 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (citation omitted).

498798.14

4.      the resources counsel will commit to representing the class.

Wolf/Schiffrin easily satisfy the requirements of Rule 23(g)(1) for appointment as interim class counsel.

### 1.      Wolf/Schiffrin Have Done Significant Work In This Case

Wolf/Schiffrin devoted considerable time and resources to independently investigating the claims asserted in this litigation and, as a result of that investigation, have filed the first complaints in the nation against Morgan Stanley and fiduciaries of the Plans in connection with losses suffered through exposure to the subprime market.  Moreover, soon after the actions were filed, Wolf Haldenstein and Schiffrin Barroway both requested plan documents from Morgan Stanley pursuant to ERISA § 104(b), 29 U.S.C. § 1024(b) (see Rifkin-Ciolko Decl., Ex. H), arranged proof of service on defendants and negotiated a stipulation with defendants with respect to the filing of an answer.  Wolf/Schiffrin are currently preparing a discovery plan, including initial interrogatory and discovery requests, third party discovery and a list of potential deponents.

### 2.      Wolf/Schiffrin Havce Extensive Experience In ERISA and Class Action Litigation

As reflected in the firm resumes attached as Exhibits I and J to the Rifkin-Ciolko Declaration, Wolf/Schiffrin are among the most experienced class action firms in the United States, having represented plaintiffs in nationwide class actions brought under ERISA and in other financially complex, large-scale litigation throughout the country.  The firms' resumes contain a representative listing of the numerous in which the firms have been lead or one of the plaintiffs' primary counsel and the results achieved in those cases, and a representative list of the numerous published decisions in cases in which they have played a lead or other significant role.

6

a.    <u>Wolf Haldenstein</u>

Wolf Haldenstein's qualifications to serve as lead counsel have been recognized

repeatedly by courts nationwide.  <u>See</u>, <u>e.g.</u>, <u>In re Luxottica Group, S.p.A. Sec. Litig.</u>, 2004 WL

2370650, at *5 (E.D.N.Y. Oct. 22, 2004) (selecting Wolf Haldenstein as lead class counsel based

on the firm's "experience and expertise"); <u>In re Comdisco Sec. Litig.</u>, 150 F. Supp. 2d 943, 951

(N.D. Ill. 2001) (noting that Wolf Haldenstein's credentials "are impeccable").  Recently, in <u>In</u>

<u>Re Dynamic Random Access Memory Antitrust Litigation</u>, MDL-02-1486 (N.D. Cal.), where the

firm was co-lead counsel, Judge Hamilton said (on August 15, 2007):

> I thought that you all did an exceptionally good job of bringing to
> me only those matters that really required the Court's attention.
> You did an exceptionally good job at organizing and managing the
> case, assisting me in management of the case.  There was excellent
> coordination between all the various different plaintiffs' counsel
> with your group and the other groups that are part of this
> litigation. . . . So my conclusion is the case was well litigated by
> both sides, well managed as well by both sides.

In <u>In re Comdisco Sec. Litig.</u>, No. 01 C 2110 (N.D. Ill. July 14, 2005), Judge Milton Shadur

observed:

> It has to be said…that the efforts that have been extended [by Wolf
> Haldenstein] on behalf of the plaintiff class in the face of these
> obstacles have been exemplary.  And in my view [Wolf
> Haldenstein] reflected the kind of professionalism that the critics
> of class actions . . . are never willing to recognize . . . .  I really
> cannot speak too highly of the services rendered by class counsel
> in an extraordinary difficult situation.

Wolf Haldenstein has been court-appointed lead counsel, co-lead counsel, or an executive

committee member in some of the largest and most significant class action lawsuits brought

across the United States, and is currently lead counsel in the following cases brought under

ERISA:

- <u>In re Tower Automotive ERISA Litigation</u>, No. 05 CV 2184 (LLS) (S.D.N.Y.)
  (settlement approved).

7

498798.14

- MBNA Corp. ERISA Litigation, C.A. No. 05-429 GMN (D. Del.).

- In re Aon ERISA Litigation, No. 04 C 6875 (N.D. Ill.).

- In re Aquila, Inc. (ERISA Litigation), 04-865 (W.D. Mo.) (settlement approved).

- Spiziri v. The St. Paul Travelers Companies, Inc. ERISA Litigation, Civ. No. 04-5096 (D. Minn.) (settlement approved).

- In re Harley Davidson, Inc. ERISA Litigation, Case No. 05-C-00547-CNC (E.D. Wis.).

- In re Guidant Corp. ERISA Litigation, 1:05-cv-1009-LJM-TAB (S.D. Ind.).

Indeed, Wolf Haldenstein has had an active practice in federal labor relations and employee rights since the commencement of the New Deal -- nearly 70 years ago. In a landmark case establishing important rights for employees, Finnan v. L.F. Rothschild & Co., 726 F. Supp. 460 (S.D.N.Y. 1989), Wolf Haldenstein was lead counsel in the first certified class action under the Federal Plant Closing Act (WARN) and recovered $3.5 million for illegally-discharged employees.

In addition, attorneys in Wolf Haldenstein's corporate department regularly advise clients as to the development and administration of pension plans subject to ERISA. Thus, the Class will benefit from the unique depth and breadth of Wolf Haldenstein's knowledge and expertise in a number of related areas of the law.

Finally, Wolf Haldenstein's primary office is located in New York City, where this action is pending. Wolf Haldenstein's proximity to the Court will facilitate the efficient prosecution of the litigation while, at the same time, reducing the burden, cost, and expense to the Class that otherwise would be incurred by counsel who have to travel great distances for hearings, depositions, and other events throughout the course of the litigation.

b.    **Schiffrin Barroway**

Schiffrin Barroway is among the most recognized firms in the specialized field of ERISA

company stock class action litigation.  Moreover, Schiffrin Barroway generally specializes in

complex class action litigation, representing investors, employees and consumers in class actions

pending in state and federal courts throughout the United States.  During its successful history,

the firm has recovered billions of dollars for class members.  Schiffrin Barroway, one of the

largest class action firms in the country, has developed a nationwide reputation for excellence

and is able to manage all aspects of complex class action litigation with particular expertise in

ERISA, consumer and securities litigation.[3]  Comprised of over 55 attorneys and a support staff

consisting of about 100 paralegals, secretaries, file clerks, investigators, CPAs and administrative

personnel, Schiffrin Barroway has the financial resources and manpower necessary to litigate

any case.

As noted recently by one District Court which appointed Schiffrin Barroway as co-lead

counsel after considering competing lead counsel applications, Schiffrin Barroway "has

extensive experience litigating ERISA breach of fiduciary class actions."  Nowak v. Ford Motor

Co., 240 F.R.D. 355, 362 (E.D. Mich. 2006).  Indeed, the firm's ERISA litigation department is

one of the foremost in the country, as recognized by the Honorable Julie A. Robinson at the final

fairness hearing in In re Westar Energy ERISA Litig., No. 03-CV-4032-JAR, at 33 (D. Kan. July

27, 2006) ("Class counsel [Schiffrin Barroway] is experienced, nationally recognized in this

field, and had the requisite skill necessary to perform the legal services required in cases as

complex as this.").[4]  The Honorable Richard W. Story, United States District Judge, in In re

---

[3]  _See also_ firm resume of Schiffrin Barroway, attached to the Rifkin-Ciolko Decl. as Exhibit I.

[4]  Attached hereto as Exhibit K to the Rifkin-Ciolko Decl.

498798.14

Mirant Corp. ERISA, et al., No. 1:03-cv-1027-RWS (N.D. Ga. Nov. 16, 2006), reached the same

conclusion. ("Class Counsel . . . are obviously eminently qualified to bring and pursue this

litigation.").[5]

In addition to the cases cited above, courts across the country, acknowledging the firm's

history and track record of impressive results, have not hesitated to appoint Schiffrin Barroway

as Lead or Co-Lead Counsel in ERISA breach of fiduciary class actions, directly analogous to

the instant matter.[6]

In the course of prosecuting ERISA class actions such as this as lead or co-lead counsel,

Schiffrin Barroway has prepared numerous consolidated pleadings, responded to motions to

dismiss, propounded discovery requests and reviewed hundreds of thousands of pages of plan-

related documents and related documentation, and litigated cases through the summary judgment

phase.  Indeed, the firm's litigation efforts have resulted in favorable court opinions in a number

of ERISA decisions denying defendants' motions to dismiss or for summary judgment.[7]

---

[5]  Attached hereto as Exhibit L to the Rifkin-Ciolko Decl.  Likewise, the Honorable Laura Taylor Swain
commended Schiffrin Barroway in its representation of a similar class in an analogous action against
Citigroup, finding that "the parties and their attorneys were creative in approaching the legal issues
presented and the challenge of coming up with meaningful and constructive relief for plan members. . . ."
Transcript of Final Fairness Hearing, In re: Citigroup Litigation, No. 03-CV-2932, at 7 (S.D.N.Y. Nov.
15, 2006), attached to the Rifkin-Ciolko Decl. as Exhibit M.

[6]  See, e.g., In re Beazer Homes USA, Inc. ERISA Litig., 07-CV-00952-RWS (N.D. Ga. April 30, 2007);
Nowak 240 F.R.D. at 355; In re Lear ERISA Litig., No. 06-CV-11735 (E.D. Mich. Apr. 10, 2006); In re
Raytheon ERISA Litigation, No. 03-CV-10940-RGS (D. Mass. Mar. 19, 2003); Gee v. UnumProvident
Corp., 03-CV-1552 (E.D. Tenn. Sept. 3, 2003); In re Westar Energy Inc. ERISA Litig., 03-CV-4032 (D.
Kan. Mar. 7, 2003); Koch v. Loral Space & Commc'ns Ltd., 03-CV-9729 (S.D.N.Y. Dec. 8, 2003); In re
Honeywell ERISA Litig., No. 03-CV-1214 (D.N.J. Oct. 22, 2004); Wilson v. Federal Home Loan
Mortgage Corp., MDL Docket No. 1584, No. 04-CV-2632 (JES) (S.D.N.Y. Apr. 7, 2004); In re Schering-
Plough Corp. ERISA Litig., No. 03-CV-1204 (D.N.J. Oct. 25, 2005); and In re Calpine Corp. ERISA
Litig., No. 03-CV-1685 (N.D. Cal. Apr. 17, 2003).  Notably, the foregoing represent a subset of the
ERISA class actions prosecuted by Schiffrin Barroway.

[7]  Cases include: Brieger v. Tellabs, Inc., 473 F. Supp. 2d 878 (N.D. Ill. 2007); In re Lear ERISA Litig.,
No. 06-CV-11735 (S.D. Mich. Apr. 10, 2006); Woods v. Southern Co., 396 F. Supp. 2d 1351 (N.D. Ga.
(continued...)

10

As a result of its extensive ERISA litigation experience, the firm "has also successfully engaged in extensive, intricate and successful settlement negotiations involving [complex] ERISA claims,"[8] including court-ordered mediations, and has recovered hundreds of millions of dollars for its clients and class members. These negotiations and mediations have resulted in several large recoveries for affected classes. See In re AOL ERISA Litig., 02-CV-8853 (as Co-Lead Counsel, Schiffrin Barroway helped obtain a $100 million settlement); In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436 (S.D.N.Y. 2004) (as Co-Lead Counsel, Schiffrin Barroway helped obtain settlement providing injunctive relief and $78 million payment for plan losses); In re Bristol-Myers Squibb Co. ERISA Litig., No. 02-CV-10129 (LAP) (S.D.N.Y) (as Co-Lead Counsel, achieved a cash recovery of $41.22 million and significant structural relief regarding how the 401(k) plans at issue are administered valued at up to $52 million); In re Honeywell Intern'l ERISA Litig., No. 03-CV-1214 (DRD) (D.N.J. 2004) (as Lead Counsel, achieved a $14 million recovery to a defined contribution plan and its participants, as well as significant structural relief regarding the plan's administration and investment of its assets).[9]

---

(...continued)

2005); In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig., No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006); In re JDS Uniphase Corp. ERISA Litig., No. C 03-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005); Gee v. UnumProvident Corp., No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005); In re Honeywell Intern. ERISA Litig., No. 03-CV-1214, 2004 WL 3245931 (D.N.J. Sept. 14, 2004); In re ADC Telecomms., Inc. ERISA Litig., No. 03-CV-2989, 2004 WL 1683144 (D. Minn. July 26, 2004); In re Sears, Roebuck & Co. ERISA Litig., No. 02-CV-8324, 2004 WL 407007 (N.D. Ill. March 3, 2004); Falk v. Amerada Hess Corp., No. 03-CV-2491 (D.N.J. May 10, 2004); In re Syncor ERISA Litig., 351 F. Supp. 2d 970 (C.D. Cal. 2004); In re CIGNA Corp. ERISA Litig., No. 03-CV-00714 (JPF) (E.D. Pa. Aug. 2, 2004); In re AOL Time Warner, Inc., Sec. & "ERISA" Litig., No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005); Hill v. BellSouth Corp., 313 F. Supp. 2d 1361 (N.D. Ga. 2004); Wilson v. Federal Home Loan Mortgage Corp., MDL Docket No. 1584, No. 04-CV-2632 (JES) (S.D.N.Y. Feb. 7, 2005); In re Polaroid ERISA Litig., 362 F. Supp. 2d 461 (S.D.N.Y. 2005).

[8] Nowak, 240 F.R.D. 355, 362 (collecting cases).

[9]   In approving the In re Honeywell settlement, the Honorable Dickinson R. Debevoise stated the following with regard to Schiffrin Barroway's representation of the ERISA class:

(continued...)

11

The ERISA litigation department is headed by Joseph Meltzer, a partner at Schiffrin Barroway.  Mr. Meltzer concentrates his practice in the areas of ERISA litigation and has helped obtain several multi-million dollar settlements on behalf of class members, including the Schiffrin Barroway class settlements listed above.  Mr. Meltzer represents employees in each of the numerous ERISA breach of fiduciary duty actions listed above for Schiffrin Barroway.  Mr. Meltzer is a member of the American Bar Association and is actively involved in the ABA's Section Committee on Employee Benefits and is an invited lecturer on ERISA class action litigation.

Recently, Schiffrin Barroway was commended for its efforts in representing a class of plaintiffs and achieving a $3.2 billion settlement in a "case of unprecedented difficulty and complexity."  *See* Transcript of Fairness Hearing Before the Honorable Paul J. Barbadoro, In re Tyco International, Ltd., No. C.02-MD-1335-B, at 82 (D.N.H. Nov. 2, 2007).[10]  Judge Barbadoro noted:

> I am completely satisfied that the amount of this settlement is an
> outstanding result for this class.  I have no question about it, that

---

(…continued)

> Plaintiffs' counsel undoubtedly possess great skill and experience in this
> kind of case and have exhibited that experience during the course of
> these proceedings.
>
> \*    \*    \*
>
> ERISA class actions are a relatively new phenomenon, presenting
> complex issues as the courts deal with the complicated ERISA statute.
> Faced with this statute, counsel had to engage in extensive factual
> explorations and address legal problems both in the context of class
> certification and during the course of the motion to dismiss.

Final Fairness Hearing Transcript, In re Honeywell ERISA Litig., No. 03-CV-01214 (DRD) (July 19, 2005), p. 40 (attached hereto as Exhibit N to the Rifkin-Ciolko Decl.).

[10]  Portions of the lengthy transcript are attached to the Rifkin-Ciolko Decl. as Exhibit O.

498798.14

> it's an outstanding amount for the class.  This is real money, a
> significant percentage of what might be recovered.  There were
> and are real risks to the class in this case . . . .  So by any measure,
> this is an outstanding result for the class."

Id. at 49, see also Id. at 134 ("But I also want to say there's no doubt in my mind about the

quality of the legal work that the plaintiffs have done here.  It has been of extraordinarily high

quality. . . .").

### 3.    Wolf/Schiffrin Will Commit the Resources Necessary to Represent the Class

Third, Wolf Haldenstein/Schiffrin Barroway have the ability and willingness to expend

the financial and manpower resources necessary to prosecute this litigation on behalf of the

Class.  Throughout their history of undertaking class actions, there has never been any question

that these firms can devote *millions* of dollars of resources for the prosecution a case.

Accordingly, Wolf Haldenstein/Schiffrin Barroway should be appointed to act as interim

class counsel in these related ERISA actions and all subsequently-filed consolidated actions and,

as reflected in Cross-Moving Plaintiffs' Proposed Order, authorized to direct and supervise the

activities of the other firms that currently or may in the future represent plaintiffs in these or

future related class actions.  Milberg Weiss, which filed its complaint only after both Wolf

Haldenstein and Schiffrin Barroway had filed their complaints, and only after publishing a notice

over the internet designed to attract a client to bring an action similar to the action already filed,

offer no reason why it and Harwood Feffer should be appointed as interim class counsel over

Wolf/Schiffrin.

### C.    Consolidation Of The Actions Is Proper Under The Federal Rules Of Civil Procedure

Consolidation of actions in federal courts is governed by Rule 42(a), which states:

> When actions involving a common question of law or fact are
> pending before the court, it may order a joint hearing or trial of any

13

> or all the matters in issue in the actions; it may order all the actions
> consolidated; and it may make such orders concerning proceedings
> therein as may tend to avoid unnecessary costs or delay,

Fed. R. Civ. P. 42(a). Consolidation is appropriate where there are common issues of law or

fact, and where the benefits of consolidation outweigh potential prejudice to the defendants. See,

e.g., Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.), cert. denied, 498 U.S. 920 (1990)

("Rule 42(a) ... empowers a trial judge to consolidate actions for trial when there are common

questions of law or fact to avoid unnecessary costs or delay."); Primavera Familienstiftung v.

Askin, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) ("so long as any confusion or prejudice does not

outweigh efficiency concerns, consolidation will generally be appropriate"); Manual for

Complex Litigation §§ 11.631, 20.11 (4th ed. 2004); 8 James Wm. Moore et al., Moore's Federal

Practice at § 42.10[l][6] (3d ed. 1997) (noting that "actions alleging similar violations against the

same defendant[s]" are "routinely" consolidated).

　　　　Consolidation of the currently filed actions, as well as any future filed actions that are

deemed to be substantially similar, is proper here because the actions each assert claims under

ERISA against similar defendants and involve common questions of law and fact. Consolidating

the actions will help to avoid unnecessary costs and delay by preventing duplicative efforts and

allow the Court to adjudicate the relevant issues in a single proceeding. In this regard, *and in

this regard only*, the Plaintiffs are in accord with the motion of Milberg/Harwood.

　　　　Accordingly, the Plaintiffs' Proposed Order seeks to consolidate these and any additional

class actions filed in or transferred to this District asserting claims under ERISA in connection

with the above-stated allegations. The Plaintiffs' Proposed Order also establishes procedures for

the captioning, filing and docketing of papers in these and any other cases that may hereafter be

filed in or transferred to this Court, procedures that are particularly necessary and appropriate in

complex class action litigation such as this.  See Manual for Complex Litigation § 21.12 (4th ed. 2004).

## III.  CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter the Plaintiffs' Proposed Order: (1) consolidating the actions; and (2) appointing Wolf/Schiffrin as Interim Class Counsel to act on behalf of the ERISA class plaintiffs in the consolidated actions.

DATED:  January 25, 2008

Respectfully Submitted,

WOLF HALDENSTEIN ADLER FREEMAN
   & HERZ LLP

By:___/s/ Mark C. Rifkin_____
Mark C. Rifkin
Michael Jaffe
Kate M. McGuire
270 Madison Avenue
New York, New York 10016
Tel:  (212) 545-4600
Fax:  (212) 545-4653
Email:  rifkin@whafh.com

**SCHIFFRIN BARROWAY TOPAZ**
   **& KESSLER, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
280 King of Prussia Road
Radnor, PA  198087
Tel:  (610) 667-7706
Fax:  (610) 667-7056
email:  jmelzer@sbtklaw.com
        eciolko@sbtklaw.com

***Proposed Interim Class Counsel***

15

498798.14

**DEALY & SILBERSTEIN, LLP**
Milo Silberstein
225 Broadway, Suite 1405
New York, NY 10007
Tel:  (212) 385-0066
Fax.  (212) 385-2117

*Attorneys for Plaintiff John Siefken*

16

EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROLYN EGAN, on behalf of herself and all
others similarly situated,

                              Plaintiff,


                    -against-

MORGAN STANLEY & CO. INCORPORATED,
MORGAN STANLEY, THE INVESTMENT
COMMITTEE OF THE MORGAN STANLEY
401(k) PLAN (f/k/a THE MORGAN STANLEY
DPSP/START PLAN), THE MORGAN
STANLEY GLOBAL DIRECTOR OF HUMAN
RESOURCES, WALID A. CHAMMAH,
CHARLES CHASIN, ZOE CRUZ, RICHARD
PORTOGALLO, JAMES P. GORMAN, NEAL A.
SHEAR, CORDELL G. SPENCER, and JOHN
DOE DEFENDANTS 1-30,

                              Defendants.

*(Captions Continued)*

Civ.:  07 Civ. 11285 (RWS)





**[PROPOSED] PRE-TRIAL ORDER NO. 1 CONSOLIDATING THE
ACTIONS AND APPOINTING INTERIM CLASS COUNSEL**

498796.7

JOHN SIEFKEN, On Behalf of Himself and
All Others Similarly Situated,

                            Plaintiff,

          -against-

MORGAN STANLEY, MORGAN STANLEY
& CO. INC., MORGAN STANLEY PLANS
"INVESTMENT COMMITTEE," MORGAN
STANLEY PLANS "ADMINISTRATIVE
COMMITTEE," JOHN J. MACK, C. ROBERT
KIDDER, ERSKINE B. BOWLES, DONALD
T. NICOLAISEN, and JOHN DOES 1-10,

                      Defendants.

C. KENNETH COULTER, on behalf of himself
and all others similarly situated,

                            Plaintiff,

          -against-

MORGAN STANLEY, MORGAN STANLEY
& CO. INCORPORATED, MORGAN
STANLEY, THE INVESTMENT COMMITTEE,
THE PLAN ADMINISTRATOR, THE MORGAN
STANLEY GLOBAL DIRECOR OF HUMAN
RESOURCES, JOHN J. MACK, ROY J.
BOSTOCK, ERSKINE B. BOWLES, KIR
HOWARD J. DAVIES, KAREN JAMESLEY,
C. ROBERT KIDDER, DONALD T.
NICHOLAISEN, CHARLES H. NOSKI,
HUTHAM S. OLAYAN, CHARLES E.
PHILLIPS, JR., O. GRIFFITH SEXTON,
DR. LAURA D. TYSON, DR. KLAUS
ZUMWINKEL and JOHN DOE 1-30,

                      Defendants.

*(Caption continued)*

Civil Action No.:  07 Civ. 11456 (JGK)

```
┌──────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: _____      │
└──────────────────────────────────┘
```

Civ.:  07 Civ. 11624 (RWS)

498796.7

GREGORY MAJOR, On Behalf of Himself and
All Others Similarly Situated,

                              Plaintiff,

        -against-

MORGAN STANLEY, MORGAN STANLEY
& CO. INCORPORATED, THE INVESTMENT
COMMITTEE OF THE MORGAN STANLEY
401(k) PLAN, THE PLAN ADMINISTRATOR,
THE MORGAN STANLEY GLOBAL
DIRECTOR OF HUMAN RESOURCES, JOHN J.
MACK, ROY J. BOSTOCK, ERSKINE B.
BOWLES, SIR HOWARD J. DAVIES, KAREN
JAMESLEY, C. ROBERT KIDDER, DONALD
T. NICOLAISEN, CHARLES H. NOSKI,
HUTHAM S. OLAYAN, CHARLES E.
PHILLIPS, JR., O GRIFFITH SEXTON,
DR. LAURA D. TYSON, DR. KLAUS
ZUMWINKEL, and JOHN DOES 1-30,

                              Defendants.

Civil Action No.:  08 Civ. 00496

---

MICHAEL CHIECKO, ELI MOND, ELENA
RAMOS, ALVIN SAINI and JOHN
SUDOLSKY, On Behalf of Themselves And All
Others Similarly Situated,

                              Plaintiffs,

vs.

MORGAN STANLEY & CO.,
INCORPORATED, THE INVESTMENT
COMMITTEE OF MORGAN STANLEY 401(k)
PLAN, THE MORGAN STANLEY GLOBAL
DIRECTOR OF HUMAN RESOURCES,
WALID A. CHAMMAH, CHARLES CHASIN,
ZOE CRUZ, RICHARD PORTOGALLO,
JAMES P. GORMAN, NEAL A. SHEAR,
CORDELL G. SPENCER, and JOHN DOE

Civil Action No.:  08 Civ. 1206

498796.7

DEFENDANTS 1-30,

Defendants

**WHEREAS,** the above-referenced actions (collectively, the "ERISA Actions") allege breaches of fiduciary duties in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") involving the Morgan Stanley 401(k) Plan ("401(k) Plan") and the Morgan Stanley Employee Stock Ownership Plan ("ESOP") (collectively, the "Plans"), retirement plans established for the benefit of the employees of Morgan Stanley and Morgan Stanley & Co., Inc. (collectively, "Morgan Stanley" or "the Company "), and such actions involve common allegations;

**WHEREAS,** appointment of interim Class Counsel is appropriate and consistent with the recommendations of the *Manual for Complex Litigation* (4th ed. 2004) and Fed. R. Civ. P. 23(g)(2);

**NOW, THEREFORE, THE COURT ORDERS** as follows:

## CONSOLIDATION OF RELATED ACTIONS

1.      The ERISA Actions and any action arising out of the same operative facts now pending or hereafter filed in or transferred to this Court are hereby consolidated pursuant to Fed. R. Civ. P. 42(a) ("Consolidated Action"). They shall be referred to collectively as *In re Morgan Stanley ERISA Litigation*, Master File No. 07 Civ. 11285.

## CAPTION OF CASES

2.      Every pleading filed in the Consolidated Action shall bear the following caption:

### UNITED STATES DISTRICT COURT

2

498796

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE MORGAN STANLEY ERISA LITIGATION | ) MASTER FILE NO.: 07 Civ. 11285 )  ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |

3.      When a pleading or other court paper filed in the Consolidated Action is intended to apply to all actions therein, the words "All Actions" shall appear immediately after the words "THIS DOCUMENT RELATES TO:" in the caption set out above. When a pleading or other court paper is intended to be applicable to less than all such actions, the party filing the document shall indicate, immediately after the words "THIS DOCUMENT RELATES TO:" the action(s) to which the document is intended to be applicable by last name of the plaintiff(s) and the docket number(s).

### MASTER DOCKET

4.      A Master Docket is hereby established for the Consolidated Action, including actions subsequently consolidated herein pursuant to this Order. Entries in said Master Docket shall be applicable to the Consolidated Action, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

5.      When a pleading is filed and the caption, pursuant to this Order, shows that it is applicable to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket. No further copies need be filed nor other docket entries made.

6.      When a paper is filed and the caption shows that it is applicable to fewer than All Actions, the Clerk shall file the original of the paper in the Master File and a copy in the file of each separate action to which it applies and shall note such filing in the Master Docket and in the docket of each separate action. The party filing such paper shall supply the Clerk with sufficient copies of any such paper to permit compliance with this paragraph.

3

498796

## MASTER FILE AND SEPARATE ACTION FILES

7.     A Master File is hereby established for the consolidated proceedings in the

Consolidated Action. The Master File shall be Civil Action No. 07 Civ. 11285. The original of

this Order shall be filed by the Clerk in the Master File herein established. The Clerk shall

maintain a separate file for each action consolidated herein and filings shall be made in

accordance with the regular procedures of the Clerk of this Court, except as modified by this

Order. The Clerk shall file a copy of this Order in each such separate file. The Clerk shall mail

a copy of this Order to counsel of record in each of the actions consolidated herein.

## NEWLY-FILED OR TRANSFERRED ACTIONS

8.     When a case that arises out of the same operative facts as the Consolidated Action

is hereinafter filed in or transferred to this Court, it shall be consolidated as provided in Section 1

above and the Clerk of this Court shall:

- File a copy of this Order in the separate file for such action;
- Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and
- Make the appropriate entry in the Master Docket.

9.     The Court requests the assistance of counsel in calling to the attention of the Clerk

of this Court the filing or transfer of any case that might properly be consolidated as part of this

litigation.

## APPLICATION OF THIS ORDER TO SUBSEQUENT CASES

10.     This Order shall apply to each class action assigned to the undersigned alleging

claims similar to those set forth in these actions and brought on behalf of participants in or

beneficiaries of the Plans. This Order shall apply to each such case which is subsequently filed

in or transferred to this Court, and which is assigned to the undersigned, unless a party objecting

4

498796

to the consolidation of that case or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date of service of this Order on counsel of that party. The provisions of this Order shall apply to such action pending the Court's ruling on the application.

11.    Unless a plaintiff in a subsequently filed or transferred case is permitted by the Court to use a separate complaint, defendants shall not be required to answer, plead or otherwise move with respect to that complaint. If a plaintiff in any such case is permitted to use a separate complaint, each defendant shall have thirty (30) days from the date the Court grants such permission within which to answer, plead or otherwise move with respect to that complaint.

<u>**NO APPOINTMENT OF INTERIM LEAD PLAINTIFF**</u>

12.    The Court finds it to be unnecessary to appoint any Interim Lead Plaintiff at this time. The Court shall make a final determination regarding the identity of any Class Representatives pursuant to a motion for class certification or otherwise as the Court deems necessary and appropriate.

<u>**APPOINTMENT OF INTERIM CLASS COUNSEL**</u>

13.    Wolf Haldenstein Adler Freeman & Herz LLP, and Milberg Weiss LLP, are appointed Co-Lead Class Counsel. Schiffrin Barroway Topaz & Kessler, LLP, and Harwood Feffer LLP are appointed to the Executive Committee of Class Counsel. Co-Lead Counsel, in consultation with the Executive Committee, shall have the responsibilities and authority as follows:

- directing, coordinating, and supervising the prosecution of plaintiffs' claims in the Consolidated Action;

- retaining experts;

- communicating with the Court;

5

498796

- communicating with defense counsel;

- conducting settlement negotiations;

- collecting and reviewing time and expense records from all plaintiffs' counsel;

- maintaining communication and promoting efficient and harmonious dealings among all plaintiffs' counsel; and

- coordinating activities to avoid duplication and inefficiency in the filing, serving and/or implementation of pleadings, other court papers, discovery papers, and discovery practice, and, generally, in the litigation.

14.    No motion shall be initiated or filed on behalf of any plaintiff in the Consolidated Action except through Co-Lead Class Counsel.

15.    All plaintiffs' counsel shall keep contemporaneous time and expense records and shall provide such records upon request to Co-Lead Class Counsel.

## SCOPE OF ORDER

16.    The terms of this Order shall not have the effect of making any person, firm or entity a party to any action in which he, she or it has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

## PRELIMINARY SCHEDULE OF PROCEEDINGS

17.    To the extent that they have not already done so, Co-Lead Class Counsel and counsel for the Defendants shall confer regarding (i) the production of certain Plan-related documents; (ii) the filing of a Consolidated Complaint; (iii) Defendants' response to the Consolidated Complaint; and (iv) a briefing schedule if Defendants file a motion in response to the Consolidated Complaint. Defendants are not required to respond to any of the individual

6

498796

Complaints until a Consolidated Complaint has been filed. The parties shall submit the proposed briefing schedule for the Court's approval.

SO ORDERED:

United States District Judge

DATED: February 11, 2008

7

498796